No. 122.—THOMAS J. PAYNE, plaintiff in error, *vs.* IRA E. SMITH and LUTHER M. SMITH, defendants in error.

[1.] A misrepresentation, if it is upon a matter of opinion or fact equally open to the inquiries of both parties, and in regard to which neither can be presumed to trust the other, is not such a misrepresentation as can be the foundation of a bill in Equity.

In Equity, in Walker Superior Court. Tried before Judge TRIPPE, April Term, 1856.

The bill charges that in August, 1851, complainant bought of Ira E. Smith, through Luther M. Smith, the son of said Ira E. Smith, three lots of land, Nos. 206, 207, and 225, in the 28th district and third section of Walker County; that he relied on the said Luther M. as the agent of his father to point out to him the true corners, lines, courses and boundaries of said lots of land; that the said Luther M. assured complainant that not more than 40 acres of lot No. 206 lay on a mountain called "Taylor's Ridge," and that the bal-

ance was good land; and that relying upon and confiding in the said representations of Luther M. he bought the said land for three thousand dollars, of which he paid $500 in cash and gave his notes for the balance; that before the notes fell due complainant discovered that the true corners and lines between two of said lots, 206 and 207, had not been pointed out and shown to complainant by the said Luther M. but that a false line had been pointed out to complainant, and that at least ninety acres of said lot 206 lay on the mountain, all of which was and is valueless; and that the remainder or valley portion of said lot was worth $10 per acre.

The bill charges, that by the false and fraudulent representations of the said Luther M. Smith he was injured and damaged $500; that the defendant, Ira E. Smith, has commenced his action against complainant on the notes given for the land in Walker Superior Court.

The bill prayed that the said action might be enjoined; and such deduction be allowed complainants on said notes equivalent to the damage sustained by him.

LUTHER M. SMITH, in his answer, denied that he made any representation to complainant to the effect that there was only 40 acres of No. 206 on the mountain, but on the contrary, he repeatedly said to complainant, both when going to and while on the land, that he was unacquainted with the lines of the lots, and that complainant must examine the lines and the land for himself, &c.

On the trial, complainant read in evidence the testimony of DRURY MOORE, taken by interrogatories: Witness was employed by Luther M. Smith to show the lines of lots No. 206, 207, 225 to complainant. I undertook to show the lines of said lots, as Smith's agent; Smith and Payne were in company with me at the time; I exhibited the metes and bounds of the lots correctly, as I thought at the time, but found afterwards that I was mistaken; I erred in regard to the line between Nos. 206 and 207; I showed complainant a wrong corner in the dividing line between these lots. The error committed made it appear that there was much more

valley land in No. 205 than there really was. Taylor's Ridge runs through No. 206, and from the place I thought was the corner to the true line is fifty-one rods and two feet, making about fifty-one acres more mountain land on No. 206 than I supposed.

Witness showed lot number 207 first; I commenced at the north-west corner of 207; we were on the west line of 207, and followed it to what we supposed was the north-west corner of 207.

The complainant proved that he had been injured and damaged $500.

Counsel for plaintiff requested the Court to charge the Jury, that "if the lines showed to Payne were not the true lines, and if a line was shown to Payne as the true line which made more good land in the settlement than there really was, then Payne is entitled to a deduction equal to the difference between the land as the lines were represented and the value of the land as the lines really existed; which the Court refused to give, but did charge the same, by adding that if a line was fraudulently shown to Payne as the true line, which made more good land in the settlement than there really was." Counsel for plaintiff requested the Court, further, to charge, that "if they believed, from the evidence, that a false line was shown to Payne by Smith, or Moore, his agent, either by mistake or design, by which Payne has been injured in getting less good land than the representations made in the settlement, Payne is entitled to have credited on his note the amount he has thus been injured"; which the Court refused to give, but did charge, that "if a wrong line was fraudulently shown to Payne, then Payne would be entitled to the deduction as insisted on by him," and the Court adds, that "a wrong line must have been fraudulently shown to entitle Payne to relief, or any deduction from the note; that if a wrong line was shown Payne by mistake only, both parties being present at the time and having equal means of information, then Payne is not entitled to any deduction from the note."

Payne *vs.* Smith and Smith.

To which charges and refusal to charge by the Court, Counsel for complainant excepted.

The Jury found a verdict for the defendant with the costs of suit.

UNDERWOOD; AKIN, for plaintiff.

CULBERSON, for defendant.

*By the Court.*—BENNING, J. delivering the opinion.

The questions in this case are, whether the charges of the Court were right, and whether its refusals to charge were right?

The law on the subject is thus laid down by *Story :* "It is said, indeed, to be a very old head of equity, that if a representation is made to another person, going to deal in a matter of interest, upon the faith of that representation, the former shall make the representation good, if he knows it to be false. To justify, however, an interposition in such cases, it is not only necessary to establish the fact of misrepresentation, but that it is in a matter of substance or important to interests of the other party, and that it actually does mislead him. For, if the misrepresentation was of a trifling or immaterial thing; or if the other party did not trust to it or was not misled by it; or if it was vague and inconclusive in its own nature; or if it was upon a matter of opinion or fact, equally open to the inquiries of both parties, and in regard to which neither could be presumed to trust the other; in these and the like cases, there is no reason for a Court of Equity to interfere to grant relief upon the ground of fraud." (1 *Story Eq. Jur.* §191.)

And this, as a general statement of the law, is no doubt correct.

If it is, then both the charge of the Court and its refusals to charge were right, for they seem to have been shaped by it.

We find nothing, then, in the action of the Court which we think authorizes the granting of a new trial.

But even if we could find something amiss in the action of the Court, we should hesitate long before we granted a new trial in the face of the facts of this case.

The plaintiff in error, in the amendment to his bill, says : " And this complainant further charges, that shortly after he ascertained that the representations of the said Luther M. Smith, his agent," (the defendant's,) " about the lines of said lot of land were not true," " he applied to the said Luther M. Smith and proposed to rescind the whole contract, and the said Luther M. Smith refused to do so."

The defendant, in his answer, says that he " made known to complainant that he, the respondent, would prefer to rescind the contract ; that the respondent offered to said complainant to cancel the trade, and to pay to said complainant a fair price and remuneration for any improvements which, in the meantime, had been made by him. This reasonable and equitable proposition of this respondent, the complainant declined."

And the defendant, in his answer to the amendment to the bill, says, " That he knows nothing of any offer by complainant to Luther Smith to cancel the contract. On the contrary, this defendant says he has always been ready and willing, and still is, to cancel the contract, and has offered so to do, which complainant has always declined."

Is it possible to conceive of anything more equitable than what the defendant thus offered to do.