MORRISON VS. KOCH and wife, impleaded.

(1) *Deed — Husband and wife — Presumption.* (2–4) *Fraudulent Representations — Vendor and purchaser of water power.*

1. A husband and wife joined in conveying real estate and in the covenants of the deed, but a bond and a mortgage of the same lands given to secure part of the purchase money ran to the wife alone. In an action on such bond and mortgage, by one claiming as her assignee, *held,* that the presumption must be that the wife was the former owner of the premises, and owned the mortgage, and could assign it without the concurrence of the husband.

2. In the sale of water power false representations by the vendor that the dam supplied " about three times as much " power as was conveyed, cannot be regarded as fraudulent, provided such dam furnished to the vendees the full amount conveyed to them.

3. Nor can the vendor's assurance that the dam *would always in the future continue to furnish* the full amount of power conveyed, be regarded as a fraudulent representation, though it proved to be erroneous; it being on its face a mere assertion of his opinion, and the purchaser having the same opportunity as himself to form a judgment on the subject.

4. If it is the intention of the parties to a deed that the grantor shall guaranty to the grantee a fixed amount of water for all time, a *covenant* to that effect should be inserted in the deed.

APPEAL from the Circuit Court for *Dodge* County.

Action to foreclose a mortgage on certain mill property in the county of Dodge, executed by the defendants *John F. Koch* and Frank Kœnig to Laura A. Hustis, to secure the payment of part of the purchase money for the mortgaged premises. The premises were conveyed to the mortgagors by John Hustis and his wife, the said Laura A. Hustis. The mortgage was

assigned by Mrs. Hustis to one Ludington, and by him to the plaintiff. John Hustis did not join with his wife in the assignment to Ludington.

The conveyance from Hustis and wife to the mortgagors, after describing the premises conveyed by metes and bounds, proceeds to grant and convey certain water and water power, as follows:

"Also as much water to propel machinery on said lot as can be drawn through a square opening in the side of the said canal or mill race, or aperture of the size and area of eight hundred and seventy-five square inches, the bottom of which square opening or aperture shall be seven feet below the head or surface of the water in the said canal or mill race, from which the same shall be drawn, and the said water running freely and unobstuctedly; the said water to be drawn through one or more openings or apertures between the top and bottom of the side of the said canal or mill race of greater or less dimensions than the said eight hundred and seventy-five square inches, as may be convenient or desirable in applying the same to machinery; provided that no more water shall be drawn than would run freely and unobstructedly through said square opening or aperture, of the area or dimensions of eight hundred and seventy-five square inches under said head of seven feet above the bottom thereof: *provided*, that the said parties of the second part, their heirs and assigns, take and use the said water subject to the following conditions and reservations:

"*First.* They shall take and use the same subject to the prior rights to use water from said canal, mill race and dam, conveyed and granted to John W. Cole, Waldo Lyon and Josiah Everett, by the deed of the said parties of the first part, bearing date the 31st day of August, A. D. 1855, and duly recorded in the office of the register of deeds in said county of Dodge, on the 7th day of December, A. D. 1855, in vol. 1 of Deeds, at page 256.

"*Second.* That the said parties of the second part, their heirs

and assigns, shall make one-third of all the repairs on the mill dam next above the said grist and flouring mill across the said river, and one-third of all the repairs needed on the canal or mill race from the said dam, by which the water may now or at any time hereafter be drawn therefrom; it being the true intent and meaning of this deed and indenture, that the said parties of the second part shall take precedence in the use of the said eight hundred and seventy-five inches of water, over all parties, excepting only the rights aforesaid, heretofore granted by the said deed dated the 31st day of August, A. D. 1855, and subject only to the duty aforesaid of promptly making the said repairs on the said canal or mill race, and the said mill dam, as the same shall become necessary."

This conveyance contains covenants by John Hustis, in respect to "the premises and water" therein described, of seizin, against incumbrances, for quiet enjoyment and of general warranty, in the usual form.

The prior right of Cole and others above excepted is "the right to use and draw from said canal six hundred (600) inches of water under nine feet head of water, that is to say, a volume of water to pass through an orifice containing an area of six hundred square inches, forever."

The defendants *John F. Koch and his wife* (the appellants) answered the complaint, setting up as a defense thereto certain alleged false and fraudulent representations made by Hustis and wife to the mortgagors, as follows:

" That at the time of the making of said deed of conveyance the said John Hustis and Laura A. Hustis, with intent to deceive and defraud the said *Koch* and Kœnig, falsely and fraudulently represented to them that the mill dam at Hustisford from which the water thereby conveyed to them was drawn, gave about three times as much water as was so conveyed to them, and was and would always remain amply sufficient to furnish all the water then conveyed to said *Koch* and Kœnig. That in truth and in fact, and as the said John Hustis and Laura A.

Morrison vs. Koch and wife, impleaded.

Hustis then well knew, the said mill dam was then not suffi-cient to furnish as much water as was by said deed conveyed to said *Koch* and Kœnig, to wit, 875 square inches of water under a head of seven feet," etc.

The answer then proceeds to state the extent of the deficiency of water and the damages resulting therefrom, also the insolv-ency of Hustis and wife, and claims that such damages be allowed in this action on the mortgage, by way of recoupment.

The circuit court found that Hustis and wife made the fore-going representations at the time they executed the conveyance of the mill property to the mortgagors, but that such repre-sentations were not fraudulently made. The court also found that when the same were made, there was in fact 875 inches of water, as specified in the conveyance, over and above the 600 inches granted to Cole, Lyon and Everett, in said stream, and that the dam and race were then of sufficient height and ca-pacity to render the same available to the mortgagors. Where-upon the court rendered the usual judgment of foreclosure against the defendants, and for the sale of the mortgaged prem-ises, and payment to the plaintiff of the full amount due by its terms on the bond which the mortgage was given to secure.

From such judgment the defendants *Koch and wife* have appealed to this court.

*L. T. Fribert*, for appellants:

1. The bond and mortgage were given for the balance of the purchase money for the mortgaged premises, and the sole con-sideration therefor was the deed from John Hustis and his wife. In this deed John Hustis covenants that "he" is well seized of the premises and water conveyed, etc.; and no attempt was made to prove that he was not the owner of the property at the time of making the deed; and no such attempt could be made, since plaintiff, as assignee of Mrs. Hustis, would have been estopped from contradicting the deed signed by her. Said bond and mortgage were therefore property coming to Mrs. Hustis from her husband, and could not be lawfully dis-

posed of by her without her husband. R. S., ch. 95, sec. 3. True, she had an inchoate right of dower in the land; but it is not a reasonable construction of said sec. 3, that the money or securities which a wife receives out of the proceeds of the sale of her husband's lands should be held by her as her separate estate with the same rights as property acquired by her during coverture "from any person other than her husband." The statute, being in derogation of the common law, should be strictly construed. *Wooster v. Northrop*, 5 Wis., 245; *Heath v. Van Cott*, 9 id., 516; *Conway v. Smith*, 13 id., 125.   2. The representation of Hustis and wife, when they sold the mill and water power in question, that the dam supplied about three times as much water as was then conveyed, was of the highest importance, and induced the purchase at the price then paid. There are seasons of the year when there is much less water in the mill pond than at other seasons, and various circumstances — such as the draining of marshes, or the building of another water mill situated higher up on the same stream — may make these variations of height more considerable. Hence it is important to a purchaser of such a mill that there be a considerable surplus of water in the pond from which his supply is drawn, over and above the power purchased by him. By the deed from Hustis and wife the grantees were to make one-third of all repairs on the dam and mill race, and the grantors the other two-thirds.   One consequence of there being no surplus, and only a small part of the water conveyed, has been that *Koch* has been compelled to rebuild the dam at his own expense, after the destruction of a part of it by a freshet.   The grantors being irresponsible, and there being no water power left to them, and therefore no property out of which their obligation to pay two-thirds of the repairs can be enforced, *Koch* is clearly entitled to recoup his damages from the amount due on the bond and mortgage in suit.

*Mariner & Ordway*, for respondent:

1. At the common law a wife, with the consent of her

husband, could legally transfer a note payable to herself, by an assignment in her own name, and the husband's assent was presumed from slight circumstances, and even from silent acquiescence. Under sec. 3, ch. 95, R. S., the wife may receive by gift, grant, etc., from any person other than her husband, and hold to her separate use, and convey, etc., in the same manner and with like effect as if unmarried. By sec. 7, ch. 84, R. S., where a grant to one is made, and the consideration is paid by another, no trust results, but the legal title vests in the grantee. The legal title to the money was in Mrs. Hustis; and neither her husband nor his creditors are calling her right in question, and no other person can. [Counsel further stated that in fact the mill property, at the time of the sale to the mortgagors, belonged to Mrs. Hustis.] 2. The parties dealt on equal terms; the defendant *Koch* had the fullest means of knowledge as to the dam and power; the statements made by the grantors were true when made; and there is no ground for the allegation of fraud.

LYON, J. I. It is contended by the learned counsel for the appellants, that the assignment of the mortgage by Mrs. Hustis to Ludington is invalid, because her husband (who, it is assumed, was the original owner of the mortgaged premises, and is therefore the owner of the mortgage) did not join with her in making such assignment. One difficulty with this position is, that there is no evidence that the husband ever owned the mortgaged premises. The facts that he joined in the conveyance to the mortgagors, and that he became a covenantor therein, are entirely consistent with the hypothesis that Mrs. Hustis owned the mortgaged premises in her own right. Without deciding what would have been the effect had it appeared that the husband was the owner of the mortgaged premises, we think, in the absence of proof to the contrary, the presumption is that Mrs. Hustis, the mortgagee named therein, was the owner of the mortgage, and might lawfully assign and transfer

it without the concurrence of her husband. We must hold, therefore, that the plaintiff is the owner of the mortgage by virtue of the assignment thereof by Mrs. Hustis to Ludington, and by the latter to the plaintiff.

II. The defense to this action is not founded upon any supposed breach of the covenants in the deed of Hustis and wife to the mortgagors, but upon the alleged fraudulent representations made by the former to the latter concerning the then present and the future supply of water. The substance of these representations was, that there then was, *and would always remain,* sufficient water in the mill dam to furnish the quantity of water conveyed to the mortgagors.

There was a further representation to the effect that the mill dam supplied *about* three times as much water as was thus conveyed. Conceding this to have been an exaggeration, the mortgagors could not have been prejudiced by it if they got their 875 inches of water under the agreed head. Besides, this representation is obviously merely the expression of a somewhat indefinite opinion or estimate of the amount or quantity of water discharged from the mill dam, and could not have been intended, or relied upon, as a positive assertion of fact. Hence it is believed that, notwithstanding the last mentioned statement, the substance of the alleged fraudulent representations, so far as they can be available as a defense in this action, is above correctly stated.

So far as such representations related to the *future* supply of water, it seems quite clear that no charge of fraud can be predicated upon them. At most, there was a mere expression of opinion, that, in the future, the conditions on which the water supply depended would remain favorable to a continuance of such supply. The mortgagors had the same means of forming an opinion in that behalf that the grantors had; and it cannot be correctly said that the expression of that opinion, although it turned out that it was an erroneous one, was a fraudulent representation. It is wanting in all of the essential elements

which constitute fraud.   If it was the intention of the parties to the deed that the grantors, or either of them, should guaranty to their grantees a fixed and definite amount of water for all time, a covenant to that effect should have been inserted in the deed.

The representation concerning the then existing supply of water was found by the circuit court to be true.   We think this finding is sustained by the proofs.   It appears quite satisfactorily from the testimony of Christian Kœnig, who ran the mill on the mortgaged premises for one year immediately preceding the sale, and was perfectly familiar with the water power in question, that at the time of the sale there was sufficient water in the mill dam to furnish Cole, Lyon and Everett with their six hundred inches under a head of nine feet, and also to furnish the mortgagors 875 inches under the head specified in the conveyance to them.   Hence, taking it to be proved that Hustis and wife made the representations stated in the complaint, we think that the truth thereof, so far as a charge of fraud can be predicated upon them, is established by the evidence.

The foregoing views dispose of all the objections taken to the judgment appealed from adversely to the appellants.   It follows that the judgment of the circuit court must be affirmed.

*By the Court.*— Judgment affirmed.