### No. 7971.

## HUSTON ET AL. *v.* McCLOSKEY ET AL.

EVIDENCE.—*Bill of Exceptions.*—*Omission of Writing.*—Where document-ary evidence is omitted from the record, the page left for it remaining blank, the concluding statement, "This was all the evidence given in the cause," is manifestly untrue, and must be disregarded. In such case, the sufficiency of the evidence, or alleged errors in instructions, can not be considered.

SAME.—A question which can be determined as well without as with the entire evidence may properly be considered by the Supreme Court.

SAME.—*Misrepresentations and Fraud.*—*Caveat Emptor.*—One who has pur-chased the lease and appointments of a hotel may not, in proof of an answer alleging deceit as to their value, give evidence of the bad con-dition of the wall paper in rooms inspected at the time of purchase.

SAME.—*Admissions.*—After a purchaser of hotel property had made con-siderable additions to the equipment of the hotel, his admissions of its receipts, profits and financial prosperity then are not competent to show that representations made to him when he purchased were not false.

PRACTICE.—*General Verdict.*—*Special Finding.*—*Rejected Interrogatory.*— Where a general verdict is sustained by the special finding, and an affirmative answer to a rejected interrogatory could not have controlled the general verdict, no error was committed by the refusal of the court to submit it to the jury.

From the Vigo Circuit Court.

*R. Dunnigan, S. C. Stimson, J. M. Allen, W. Mack* and —— *Davis,* for appellants.

*C. F. McNutt, D. W. Henry, S. C. Davis* and *S. B. Davis,* for appellees.

NEWCOMB, C.—This was an action to recover the amount alleged to be due on two promissory notes, executed by the defendants, and to foreclose a mortgage securing said notes.

The answer alleged that the notes, with others which had been paid, were given in consideration of the sale by the plaintiffs to the makers thereof, of the lease, furniture, equipments, etc., of a hotel in the city of Terre Haute, known as the "National House," and that the consideration of said notes had failed, by reason of certain frauds and misrepresentations of the plaintiffs, whereby the defendants

had been induced to make said purchase at a price greatly in excess of the value of the property received.

No question is made as to the sufficiency of the answer. It is not important, therefore, to enter into detail as to its averments. The plaintiffs replied by a general denial. There was a jury trial, a verdict for the defendants, and judgment on the verdict, over the plaintiffs' motion for a new trial.

The only error assigned is the overruling of the motion for a new trial. The reasons alleged for a new trial were:

1st. That the verdict was contrary to law, and that it was not sustained by sufficient evidence;

2d. The admission of certain evidence, objected to by the plaintiffs;

3d. The rejection of certain evidence offered by the plaintiffs;

4th. The giving of certain instructions to the jury, at the instance of the defendants, which were excepted to by the plaintiffs;

5th. Refusing to submit to the jury a certain interrogatory, proposed by the plaintiffs.

The transcript contains what purports to be a full stenographic report of the evidence given on the trial, and the bill of exceptions states that "This was all the evidence given in the cause," but the appellees insist that, in fact, all the evidence is not in the transcript, and therefore the record must be treated as if none were given.

It appears that a letter written by the plaintiffs, or one of them, to the defendant McCloskey, was read in evidence, but it is not copied into the record. After stating that the letter was identified by the witness McCloskey, the bill of exceptions says: "The letter was here read in evidence, as follows," but where the letter should be copied, the page is blank. It is, therefore, manifest that the transcript does not contain all the evidence, and, in such case, the statement to the contrary in the bill of exceptions must be dis-

regarded.    *Merrifield* v. *Weston*, 68 Ind. 70; *Powers* v. *Evans*, 72 Ind. 23.    We can not, therefore, consider the sufficiency of the evidence, nor the alleged error in the instructions.    *The Jeffersonville, etc., R. R. Co.* v. *Cox*, 37 Ind. 325; *May* v. *Pavey*, 63 Ind. 4.    But where the question presented is of such a character that it can be determined as well without the entire evidence as with it, such question may properly be considered.    *The Estate of Wells* v. *Wells*, 71 Ind. 509.

The answer alleged, among other things, that, to induce the defendants to make the purchase for which the notes and mortgage were given, the plaintiffs represented that the furniture, fixtures and appurtenances belonging to said hotel business, and with, and by means of, which the plaintiffs had run and operated said hotel, had cost them $11,000, and were then of the reasonable value of $9,000, when, in truth, said furniture, fixtures and appurtenances did not cost to exceed $6,000, and were then not worth more than $3,000. Also, that the plaintiffs represented that the net profits of the hotel, during the time they had operated it, had been $5,000 per annum, when, in fact, said plaintiffs had not made any profits.

The plaintiff Huston was examined as a witness in behalf of himself and his co-plaintiff, and, in the course of his testimony, stated that the hotel property sold to the defendants consisted of "all the furniture and carpets, of the cooking apparatus, of all that pertains to the laundry, of the gas fixtures, plumbing and water-works; everything, in fact, in the hotel, almost, excepting the walls.    The fixtures of the rooms, such as the papering, and all that belongs to the hotel."    On cross-examination, this witness stated that the amount expended by the plaintiffs on the water-works, plumbing, gas fixtures, painting, papering, etc., was nearly $1,400; that they had paid about $2,000 for new furniture; and that the original purchase by them cost $6,500, making

the cost to them about $10,000. The witness was questioned, but stated his inability, to give the amount expended for papering, as that went into the general expense account without being itemized.

The defendant McCloskey was examined in rebuttal, and testified that the papering was in very bad condition at the time of the purchase; and he was then asked, what the papering he found on the walls would be worth? To this the plaintiffs objected, on the ground of immateriality; but the objection was overruled, and they excepted. The witness answered: "I suppose about one-third of the rooms would do to use. I don't consider the balance worth anything. Papering is worth from two to six dollars per room." It elsewhere appeared that the hotel contained about sixty rooms.

This evidence was not competent for the purpose of proving that the defendants were deceived as to the condition of the papering, for if it was in bad condition they could readily have discerned it, and therefore could not be deceived; but we do not understand that it was introduced for that purpose, but rather to contradict the testimony of Huston as to the cost of the improvements and repairs made by the plaintiffs. Other evidence was given of the cost and value of the residue of the articles purchased by the defendants, and the evidence omitted from the bill of exceptions may have further shown the relevancy and materiality of this testimony. At least, we can not say that it affirmatively appears that the court erred in this ruling.

The next ruling complained of is the rejection of the following evidence offered by the plaintiffs. The plaintiff Huston testified that a few months after the sale to the defendants he had a conversation with the defendant McCloskey, and that, "during that conversation, he said they were getting along very nicely, indeed, and remarked to me that I had made a great mistake in selling out; that they had been running the hotel full every night, and that they had

cleared every month, with the exception of the ———." At this point, the defendants objected to the witness stating anything that McCloskey may have said in regard to what they were clearing in the hotel. The plaintiffs' counsel then stated to the court that they proposed to show that, in the conversation last spoken of by the witness, McCloskey said that the house was clearing so much—an amount equal to or exceeding the alleged representations of the plaintiffs, *for the purpose of showing that if plaintiffs did make such representations they were not false.*" The bill of exceptions states that the defendants based their objection upon the ground that Nelson, one of the plaintiffs, had sworn in answer to an interrogatory, that the hotel had made but $2,000 profit in the period of one year and five months, in which the plaintiffs had operated it; and on the further ground that the statement of one partner, made when not in the transaction of partnership business, did not bind the firm.

Whether the reasons stated in support of the objection were valid or not, is not important if any legal reason existed for the rejection of the proffered testimony. It appeared by the evidence already adduced, that before this conversation the defendants had made considerable additions to the equipment of the hotel. The circumstances having been thus changed, the proposed testimony was not competent for the purpose for which it was offered.

The only remaining question is, did the court err in refusing to submit to the jury the following interrogatory propounded by the plaintiffs:

"Did not the defendants, or a part of them, after the representations complained of had been made by the plaintiffs, go through the National House with Captain Mast, an experienced hotel man, acting for them, and examine and value the property in the house, which plaintiffs proposed to sell, and did not Captain Mast fix the value of the property at $5,000, and did he not tell them, that considering represented

profits, location and everything, that it was not worth over $8,000?"

The price the defendants agreed to pay was $9,000. The matters embraced in this interrogatory were included in other interrogatories which were answered by the jury, except the value of the property as this interrogatory assumes it was estimated by Captain Mast. The jury found, in answer to the other interrogatories, that Mast and a part of the defendants went through the National House, before the trade was closed, to examine the property and value it; that they made out a list of the property and fixed a value on it; also, that the defendants had full time and opportunity to examine the books and property of the house before they purchased; that Mast was not an agent of the defendants, and that he was deceived when he valued the property.

If the rejected interrogatory had gone to the jury and been answered in the affirmative, it could not have controlled the general verdict. The answer charged the plaintiffs with fraudulent representations as to the quantity and quality of a considerable portion of the material purchased, which was so situated that it could not be fully examined nor correctly valued, and that the defendants relied upon such representations. Also, that the plaintiffs used fraudulent devices to prevent a full and proper examination of other articles by the defendants.

These allegations of the answer were found by the general verdict to be true, and the special finding that Captain Mast was deceived when he made his examination and estimate fortifies the general verdict. It is clear, therefore, that the plaintiffs were not injured by the refusal of the court to submit to the jury the interrogatory in question.

The record does not present any available error, and the judgment should be affirmed.

PER CURIAM.—It is therefore ordered, on the foregoing opinion, that the judgment below be, and it is hereby, in all things affirmed, at the costs of the appellants.