No. 1,097.

## BOLDS v. WOODS.

REAL ESTATE.—*Vendor and Purchaser.*—*False Representations as to Value.*—*When Will not Support Action.*— *Caveat Emptor.*— Representations made by the vendor of land, which affect merely its value, will not support an action for damages, although known by him to be false, if the purchaser with reasonable diligence could have ascertained the truth.

SAME.—*Representations as to Material Fact.*—*Land in Other State.*—If, however, the representations are not merely opinions as to the value and character of the property, but representations of some material fact, as to which the avenues of inquiry are not open to the purchaser, as where the land is situated in another State at a considerable distance away, an action may be maintained thereon.

SAME.—*Representation as to Improvements and Crops.*—If representations, known by the vendor to be false, are made as to the location of land in another State, the character of the improvements, the nature and quantity of crops produced in the past and the consequent value of the land, with the intention that the other party shall act thereon, which he does, to his damage, the latter may recover.

EVIDENCE.— *Declarations.*— *Res Gestæ.*—All statements made by a vendor during the course of negotiations for the sale of land and as a part of the conversation in which the false representations sued on were made, constitute a part of the *res gestæ* and are admissible as original evidence.

DEPOSITION. — *Unauthorized Officer.* — *Void if Taken by.*— A "county clerk" or "clerk of a county" in another State is not an officer authorized to take depositions to be used in this State, and a deposition taken before such officer, unless it appears that he is *ex officio* clerk of some court of record, is void and can not be used in evidence in the trial of a cause in any court of this State.

SAME.—*Admission of Improper Evidence.*—*Presumption.*—The fact that other witnesses testify to the same facts testified to in a void deposition does not render the reading of the latter in evidence harmless, for where material evidence is improperly admitted the presumption is that it influenced the result, unless the contrary is made to appear.

From the Adams Circuit Court.

*P. B. Manly, E. E. Friedline, J. J. M. La Follette* and *O. H. Adair*, for appellant.

*J. F. France, J. E. K. France, J. T. France* and *J. T. Merryman*, for appellee.

REINHARD, J.—Woods sued Bolds, and recovered damages of him for alleged fraud and deceit in the exchange of real estate.

The overruling of the appellant's demurrer to the appellee's amended complaint is claimed to be reversible error.

It appears from the averments of the complaint, that in June, 1890, the parties were both residents of Adams county, Indiana, and that Woods was the owner of a steam flouring mill situated in the town of Geneva, in said county, upon lot No. 256, in said town, which then was, and still is, of the value of $8,500; that Bolds was at that time, and is still, a resident of said town of Geneva, and a prominent citizen and business man of the town, engaged in a general dry goods, grocery, and notion trade, and that for more than three years before said time the appellee and appellant had been, and, at the time of the transaction complained of, still were, having business relations with each other which were of a pleasant and agreeable character, the appellee selling to the appellant flour, to be retailed by the latter at his store; that appellant handled and sold flour for appellee on commission during said time, and the appellee purchased from the appellant dry goods, groceries, and notions, and that business transactions between the parties were of daily occurrence during the whole period of said three years; that in the year 1888, the appellee was contemplating erecting said flouring mill in said town of Geneva, and was preparing to do so on condition that the citizens of said town should raise a certain bonus or

subscription for the appellee, and that appellant took hold of said subscription matter, and was the leading and moving spirit in said transaction, and that through his influence and aid said subscription and bonus was raised, and the appellee did erect said mill, and that by reason of their business and social relations the appellant gained the confidence of appellee, and the reliance in his honesty and integrity, and fully believed and relied upon all his statements in business matters and transactions; that appellant was, in June, 1890, and for a long time had been, the owner of two hundred and twenty acres of land in Gray county, Kansas, near the town of Ingalls, the description of which is given in the complaint; that said land was, and is, about one thousand miles distant from the county of Adams, in Indiana; that appellant had, before the time hereinafter stated, frequently been to visit said land in Kansas, and to improve the same, and for about one year lived upon or near the same, all of which appellee well knew; that in June, 1890, the appellee was sick and crippled and unable to travel about by reason of such condition, and by reason thereof was unable to run, operate, and manage said flouring mill, and the business connected therewith, as the appellant then and there well knew; that appellee and appellant were then negotiating a trade of said land for said flouring mill; that appellee had never seen said land, and had no knowledge of its location, condition, value, and quality, except what he derived from the statements of appellant in relation thereto, as appellant then and there well knew, and that during such negotiations the appellee then and there informed the appellant that he was unable, by reason of said sickness, to go to the State of Kansas to see said land, and had no way of ascertaining its condition, location, value, and quality, and that he did not intend to go and see the

same, but would rely fully upon appellant's word and statements as to its condition, location, value, and quality; and then and there said to the appellant that he had confidence in his truthfulness and honesty, and did not believe appellant would make any false or un-truthful statements concerning said land, and said to ap-pellant that in case they should exchange said properties he would take and rely upon the statements of appellant in relation to the location, condition, value, and quality of said land, and the appellant being then and there fully advised, and knowing of the appellee's sick condition, as aforesaid, and knowing that he was unable to go and see said land, and unable to ascertain anything about its condition, location, value, and quality, except as he learned it from appellant, and fully knowing that appellee would rely on and believe whatever he might say concerning said land, and knowing of the great confidence and reliance the appellee put in him, the appellant did then and there wrongfully take advantage of appellee and of his reliance and confidence, and did then and there falsely and fraudulently represent and state to the appellee that said Kansas land was, by reason of its close proximity to the said town of Ingalls, the county seat of Gray county, Kansas, and its location, condition, and quality, of the value of twenty-five dollars per acre, and that the same could be readily sold for said price at any time; and he further falsely and fraudulently stated that it was as good and valuable land as there was in Gray county, Kansas; and he further falsely and fraudulently stated to appellee that said land was within one mile of said town of Ingalls, county seat, as aforesaid; and he further falsely and fraudulently stated that said land was under good cultivation; and, further, that said town of Ingalls had a population, at that time, of five hundred inhabitants; and, further, that said land was

good farming land, was well improved with good buildings and fences; and, further, that said land had theretofore produced good crops of all kinds; that said appellee, then and there having great confidence and reliance in the honesty and truthfulness of said appellant, relied upon and believed all of said statements herein set out, and then and there traded his flouring mill property in Geneva, Adams county, Indiana, to said appellant for his said real estate in Gray county, Kansas; that in said trade it was agreed and understood between the parties that said flouring mill should be valued and taken in, in said trade, at the sum of $8,500, and that said lands should be valued and taken in at $25 per acre, being the total sum of $5,500, and that the appellant should pay the appellee the sum of $3,000, all of which was done, and appellant paid the appellee said sum of $3,000, and executed and delivered to him a deed of conveyance for said 220 acres of land in Kansas, and appellee, still believing and relying upon the statements theretofore made as being true, did then and there execute and deliver to the appellant a good and sufficient deed, fully conveying to him said flouring mill property; and appellee further says, that said representations and statements hereinbefore set out concerning the condition, location, quality, and value of said Kansas land were each and all of them false and fraudulent, as the appellant then and there well knew; that said Kansas land was not, by reason of its close proximity to the town of Ingalls, the county seat of Gray county, Kansas, its location, condition, and quality, of the value of $25 per acre, but, in truth and in fact, was only then of the value of $5 per acre, and that said land could not then be sold at any time for $25 per acre, nor for more than $5 per acre; that said land was not then as good and valuable land as there was in Gray county, Kansas, but was in truth and in fact only

of the value of $5 per acre, and was very poor land; that in truth and in fact there was at that time other good and valuable land in Gray county, Kansas, of the value of $40 per acre; that said land was not within one mile of the town of Ingalls, the county seat of Gray county, Kansas, but was, in truth and in fact, a distance of four miles or more from said town; that said land was not then under good cultivation, but that, in truth and in fact, it never had, at any time, been cultivated at all; that said town of Ingalls had not then a population of five hundred inhabitants, but that, in truth and in fact, it had, at that time, only about one hundred and fifty inhabitants; that said land was not then good farming land, and was not well improved with good buildings and fences, but, in truth and in fact, was very poor farming land, and had no buildings, fences, or other improvements thereon whatever; that said land had not theretofore produced good crops of all kinds, but had produced no crops of any kind whatever,—all of which statements and representations heretofore set out and mentioned were each and all of them falsely, fraudulently, and purposely made for the sole purpose of cheating and defrauding the appellee out of his flouring mill property, as the appellant then and there well knew; that appellant, at the time of said trade, as aforesaid, knew that appellee relied on and believed all the statements made by appellant to him, as aforesaid, and that appellee was induced to make said trade by reason of said false and fraudulent statements, by reason of all of which appellee has sustained damages in the sum of $5,000, for which he demands judgment, and for all other and proper relief.

It is earnestly insisted by the appellant's counsel, that all the averments of the complaint are directed to the question of the value of the land only, and that no action

for damages can be maintained for mere misrepresentations of the value of the property sold or given in exchange.

It is the general rule that false representations of the vendor of land as to its character, condition and value, and the adaptability of the soil to productiveness, etc., affecting merely the value of the property, will not support an action for damages, although the seller knew the representations to be false when he made them.

In such cases, the maxim *caveat emptor* applies, except, of course, in cases of fraud. The matters embraced in the alleged misrepresentations being ordinarily open to inquiry, and capable, with reasonable diligence, of being investigated, the purchaser will not be excused from exercising ordinary vigilance in ascertaining the real condition of the property. Representations of this character can not be said to be strictly or peculiarly within the knowledge of the vendor, and are generally considered as mere *gratis dicta.* They are, at most, only expressions of opinion, or estimates founded on judgment, about which honest men might easily and properly differ. *Gordon* v. *Parmelee,* 2 Allen (Mass.) 212; *Mooney* v. *Miller,* 102 Mass. 217; *Parker* v. *Moulton,* 114 Mass. 99; *Brown* v. *Castles,* 11 Cush. 348; *Long* v. *Woodman,* 58 Me. 49; *Holbrook* v. *Connor,* 60 Me. 578; *Williams* v. *McFadden* (Fla.), 1 So. Rep. 618; *Shade* v. *Creviston,* 93 Ind. 591; *Hartman* v. *Flaherty,* 80 Ind. 472; *Cagney* v. *Cuson,* 77 Ind. 494; Kerr Fraud and Mistake (Am. ed.), p. 82; *Kennedy* v. *Richardson,* 70 Ind. 524; *Sieveking* v. *Litzler,* 31 Ind. 13; *Pasley* v. *Freeman,* 3 T. R. 51; *Haycraft* v. *Creasy,* 2 East, 92; *Saunders* v. *Hatterman,* 2 Ired. (N. C.) 32; *Credle* v. *Swindell,* 63 N. C. 305; Bish. Contracts, section 664; *Dillman* v. *Nadlehoffer,* 119 Ill. 567; *Sherwood* v. *Salmon,* 2 Day (Conn.), 128; *Payne* v. *Smith,* 20 Ga. 654; *Lehman* v. *Shackleford,* 50

Ala. 437; *Ellis* v. *Andrews*, 56 N. Y. 83; *Hill* v. *Bush*, 19 Ark. 522; *Crater* v. *Binninger*, 33 N. J. 513; Cooley Torts, 476.

The rule is otherwise, however, if the representations are not merely opinions or estimates as to the value and character of the property, but representations of some material fact, and the avenues of inquiry are not open to the purchaser, as where a party buys from or exchanges with another real estate, and that received by the vendee is situate in another State, at a considerable distance away, as in the present case. Under such circumstances, if false representations are actually made as to the location of the land, the character of the improvements, the nature and quantity of crops produced upon it in the past, and the consequent value of the land, such representations will be material; and if made with a knowledge of their falsity, and with the intention of being acted upon by the other party, and if relied upon by the purchaser, or the one sustaining that relation, and the latter is deceived and sustains damage thereby, he can maintain an action therefor. *Swimm* v. *Bush*, 23 Mich. 99; *Ladd* v. *Pigott*, 114 Ill. 647; *Bischof* v. *Coffelt*, 6 Ind. 23; *Huffstetter* v. *Buzett*, 32 Ind. 293; *Nysewander* v. *Lowman*, 124 Ind. 584; *Williamson* v. *Wooten*, 132 Ind. 202; *Jones* v. *Hathaway*, 77 Ind. 14; *Harris* v. *McMurray*, 23 Ind. 9. *Huston* v. *McCloskey*, 76 Ind. 38; Cooley Torts, 498; 5 Am. & Eng. Encyc. of Law, 318, *et seq.*

It is our opinion that the court correctly overruled the demurrer to the amended complaint.

On the trial, the appellee, over the appellant's objection and exception, was permitted to testify that appellant had said to him, in the course of the negotiations between them, that a large sugar manufactory was about to be erected in the town of Ingalls, which would be in op-

·eration within a year, and would employ at least one hundred hands.

There was no foundation in the complaint for such testimony. Appellant had a right to know what the alleged misrepresentations were, and to be allowed a reasonable opportunity to meet any proof that might be introduced upon the subject by the appellee. Moreover, representations concerning facts which are to transpire in the future, are either mere opinions or mere promises, and will, therefore, not support an action for fraud or deceit. Fraud can not be predicated on a promise to be complied with in the future, even by the maker of such promise, much less by a third person. *State, ex rel.,* v. *Prather,* 44 Ind. 287; *Gallager* v. *Brunel,* 6 Cow. (N. Y.) 346; *Morrison* v. *Koch,* 32 Wis. 254; *Hazlett* v. *Burge,* 22 Ia. 535; *Markel* v. *Moudy,* 11 Neb. 213.

It appears, however, that the statement regarding the representation as to the sugar manufactory were made in the course of the negotiations, and as a part of the same conversations in which the other representations were made. This being true, we think the statement referred to constituted a part of the *res gestæ,* and was properly admitted in evidence.

It is a well known rule of law that all the circumstances and declarations growing out of the main fact are considered parts of the *res gestæ,* and may be given in evidence. Every declaration made at the time the main fact under consideration takes place, and so connected with it as to illustrate its character, is admissible ·as original evidence. *McLeod* v. *Ginther,* 80 Ky. 399; *Baker* v. *Gausin,* 76 Ind. 317; *Ohio, etc., R. W. Co.* v. *Stein,* 133 Ind. 243.

We think the evidence was competent.

It is also insisted that the court erred in overruling the appellant's motion to suppress certain depositions in

the cause, and in allowing said depositions to be read in evidence over appellant's objections and exceptions. These rulings were properly excepted to, and were assigned as a cause in the motion for a new trial. The question is, therefore, properly presented for our determination.

The notice to take these depositions specified that they were to be taken in the town of Ingalls, in the office of the clerk of Gray county, Kansas. The certificate of the officer before whom they were taken recites that they were taken before "E. G. Barton, Clerk of Gray county, Kansas," and the official signature appended to the certificate is, "E. G. Barton, County Clerk."

It does not appear, in the officer's certificate, or in the notice or official signature, that said officer is *ex officio* clerk of any court of record in the State of Kansas. The point is earnestly pressed upon our consideration, that the officer designated as "county clerk" and "clerk of Gray county," is not an officer authorized to take depositions under our statute.

Section 422, R. S. 1894, provides that depositions may be taken within or without this State, before any judge, justice of the peace, notary public, mayor or recorder of a city, clerk of a court of record, or commissioner appointed by the court to take depositions.

Under this statute, it has been held that depositions can only be taken before an officer therein authorized to take such depositions, and that a deposition taken before one who certified that he was "a commissioner in chancery for the circuit court," were void for want of authority in the officer who took them, and should have been suppressed, although the dedimus and notice were waived, and the adverse party was present at the taking. *Thompson* v. *Wilson*, 34 Ind. 94.

In the absence of legitimate information to the con-

trary upon the subject, we must presume either that the courts in Kansas are the same as in our own State, or that the common law is in force there with respect to the subject of courts and their officers.   We may, perhaps, know judicially that a county court in Kansas is a court of record, but that the county clerk, or clerk of the county, is the clerk of the county court, or what the functions of this official are, we can not judicially know. We may take cognizance of the fact that there are county officers in the State of Kansas by whom the usual political and governmental functions of the county are performed.   Such officers may consist of an auditor, treasurer, commissioner, and other functionaries, but the titles and duties of such officers are usually designated and prescribed by local statutes, and not by the principles of the common law, and of the statutes we are not permitted to take cognizance.   A clerk may be a person who keeps the records of a court, but not necessarily so.   He may be the keeper of other records, such as are kept by the recorder, and he also may, and at one time did in this State, perform the duties of the county auditor.   *Jones* v. *Cavins*, 4 Ind. 305.

A county clerk may be the prothonotary of a court, county auditor, and county recorder at once, but these offices are, nevertheless, separate and distinct, though held by one person called clerk.   19 Am. & Eng. Encyc. of Law, 548.

The words county clerk are not used in our constitution to designate the functionary whose duty it is to keep the records of the courts in the various counties, but that official is designated as the clerk of the circuit court. Const. Ind., article 6, section 1; R. S. 1894, section 151.

The terms county clerk and clerk of the circuit court are often used interchangeably, it is true, but incorrectly so, we think.

Thus, a recent Indiana author of a meritorious work has even gone to the extent of declaring that "the duties of the county clerk or those of the clerk of the circuit court are performed by the same person, yet there is a distinction in the two classes of duties"; and he undertakes to point out the duties of the "county clerk as distinguished from those of an officer of the court," stating that the functions of that official as "clerk of the circuit court" were fully enough considered in other works in this State. Robinson on Co. & Tp. Officers, section 1741.

We think the learned author would have been more accurate in his statement concerning the duties of such clerk had he said that the clerk of the circuit court had other functions to perform besides the keeping of the records of the circuit court, but this is not very material to the point now under consideration.    Whatever might be the correct rule, had the depositions been taken in this State, we feel certain that it would be improper to hold that the county clerk of any foreign State is an official authorized by our statute to take depositions to be used in causes pending for trial in the courts of this State.    If there were anything in the certificate or signature of the officer, indicating that he was a clerk of a court of record, the conclusion might be different.    But, as we have already stated, there is no certification by the officer that he is *ex officio* clerk of any court.    Had the official character of the officer appeared from his signature to the certificate, though not stated in the body of the certificate, it would have been sufficient.    *Read* v. *Patterson*, 11 Lea (Tenn.), 430.

Even the official seal, a copy of the impression of which is in the transcript, contains only the words "Gray county, Kansas," and contains not the least sign or token that it is the seal of a court.

While it must be conceded that the point is somewhat

technical, this will not relieve us of the duty of declaring the law as we understand it.

The case of *Thompson* v. *Wilson, supra,* is, in our judgment, decisive of the question, and stands to-day as the law in this State.

A "county clerk" or "clerk of a county" in another State, is not an officer authorized to take depositions to be used in this State and a deposition taken before such officer, unless it appears that he is *ex officio* clerk of some court of record, is void and can not be used in evidence in the trial of a cause in any court of this State. The taking of depositions is regulated by statute, and it is essential that there be a substantial compliance with the statutory provisions. The omission of a statutory requirement destroys the competency of the deposition as evidence where objection is made by the party against whom it is to be used. Nor will it do to say that the error of overruling the motion to suppress, and admitting the depositions in evidence, is harmless.

The fact that other witnesses testified to the same facts as those who deposed does not render the reading in evidence of the depositions any less hurtful than they would have been if no other testimony had been given on the same subjects.

The witnesses in the depositions testify to more than the mere value of the land. They depose also in reference to its condition and location, what, if any, crops had been grown upon the land, also to the value of the best lands in Gray county, Kansas, and whether or not the land in controversy would produce such crops as are produced on good lands in Gray county, Kansas—facts not testified to by the witnesses present in court. Appellant positively denied that any representations, such as are here contradicted by the deposing witnesses, were ever made by him, and the rule sought to be invoked by the

appellee, as declared in *Dickinson* v. *Colter*, 45 Ind. 445, and in *Naugle* v. *State*, 101 Ind. 284, does not apply.

On the other hand, it is well settled that where material evidence is improperly admitted, the presumption arises that it influenced the result, unless the contrary is made to appear. *Thompson* v. *Wilson, supra; Baker* v. *Dessauer*, 49 Ind. 28; *Barnett* v. *Leonard*, 66 Ind. 422.

We think the court erred in overruling the motion for a new trial.

Judgment reversed.

Filed Mar. 29, 1894.