STATE EX REL. McGOVREN ET AL. *v.* GILKISON, JUDGE.
[No. 26,575.    Filed June 11, 1935.]

*Allen, Hastings & Allen,* for respondent.

FANSLER, J.—This is an original action for a writ prohibiting the respondent from enforcing a restraining order against the relators and The Union Bank of Loogootee, Indiana. On the filing of the petition an alternative writ issued.

The restraining order in question was issued upon the complaint of Frank Kays, in an action in which the relators in this case were the defendants. The complaint alleges that the relators were elected mayor, clerk, treasurer, and members of the common council of the city of Loogootee in November, 1929, and that they qualified, and have since been, and are claiming to be, the officers of that city; that an election was held, for the purpose of electing city officers, on the 7th day of May, 1935; that the plaintiff Kays was elected mayor, and certain other named persons elected to the other city offices, at that election; that the plaintiff, and the officers elected with him, received a certificate of election, took and subscribed the oath required of them, and filed and presented their official bonds, "and duly performed any and all other acts of them required by law in assuming their respective official duties"; and that at noon on May 13, 1935, they assumed and took upon themselves their official duties, and have each continuously since served in their official capacity; that the terms of office of the defendants expired on May 13, 1935; that the defendants have interfered with and interrupted the plaintiff and his associates in the performance of their duties as city officers, and have threatened to, and are threatening to, continue to interfere; that the plaintiff and his associates have demanded the books, records, and property of the city in the custody of the defendants, which demand has been refused; that The Union Bank of Loogootee, also a defendant, has refused, upon demand, to transfer the funds upon de-

posit with it to the plaintiff and his associates as officers of the city, and to honor checks and warrants upon said funds; that no legal action challenging the validity of the title of plaintiff and his associates has been filed, and that their title to their respective offices is not questioned in any proceeding. It is alleged, however, "that the defendant, Phillip McGovren, as the former Mayor of the said City of Loogootee, has made the public statement that the said election so held on May 7, 1935, was invalid and illegal and that for this reason he would not recognize the present city officers. That no action has been filed in court to determine the validity or legality of said election by the said defendant, Phillip McGovren." That an emergency exists for a temporary restraining order, without notice. There is a prayer "for a temporary order mandating the said defendants to transfer and deliver to the said present officers of the said City of Loogootee all books, records, and property and public funds belonging to said city now in their custody and temporarily restraining the said defendants and each of them from interrupting and interfering with the performance of the official duties of the said present city officers and restraining and enjoining said defendants from attempting to occupy the respective city offices of said city or attempting to perform the official duties of said respective city offices of said city until notice can be given and a hearing of this cause of action can be had, and that on final hearing, said injunction be made perpetual. . . ."

Upon the filing of this complaint, what is termed "a temporary restraining order and order of mandate" issued, ordering the defendants to deliver and transfer to Frank Kays, the plaintiff, "as the elected and duly qualified Mayor of the City of Loogootee," all books, records, papers, and other property, in their possession, belong-

ing to said city; and that The Union Bank transfer and deliver all funds belonging to the city, in the bank, to the possession and control of Phillip Bradley, "as the elected and duly qualified and acting Clerk-Treasurer," and honor and recognize all warrants drawn on said funds by him; and it was further ordered that all of the defendants be temporarily enjoined from interfering with or interrupting "the present city officials of said city of Loogootee as hereinabove named and set out," until notice and further order of the court.

It is further apparent from the complaint, notwithstanding the allegations that the plaintiff and others claiming to have been elected with him assumed office and were the acting officers, that the former officers had refused to recognize the election as legal, and to surrender the offices, books, records, and funds of the city, and that the purpose of the action below was to procure possession of the offices, books, records, funds, and property of the city in the hands of the hold-over officers, so that those claiming to have been elected at the 1935 election could, in fact, assume the offices and take over the government of the city.

Courts of equity have no jurisdiction to oust one set of city officers, and require them to deliver over the books, records, funds, property, and other paraphernalia of office, and install another set of city officers by injunction. This court said, in *State ex rel. Coffin* v. *Superior Court of Marion County* (1925), 196 Ind. 614, 618, 149 N. E. 174: "The rule that equity has no jurisdiction to try disputed questions concerning rights that are purely political, nor to undertake the protection of such rights by issuing restraining orders and injunctions has been long established, and is declared by authorities too numerous for citation, many of which are collected in text books and

reference books"; and quoted with approval from the Supreme Court of Nebraska, as follows: "The doctrine that equity is conversant only with matters of property and the maintenance of civil rights, and will not interfere for the protection of rights which are merely political, is supported by an almost unbroken line of authorities (citing cases). A civil right is 'a right accorded to every member of a district, community or nation,' while a political right is 'a right exercisable in the administration of government.' Anderson's Law Dictionary, 905. In 2 Bouvier's Law Dictionary, 929, it is said: 'Political rights consist in the power to participate, directly or indirectly, in the establishment and management of the government. . . .' " See also *State ex rel. Fry* v. *Superior Court of Lake County* (1933), 205 Ind. 355, 186 N. E. 310.

It is contended by respondent, however, that "the welfare and good order of society and government require that those engaged in the discharge of public duties should not be disturbed by claimants whose right to discharge such functions is as yet uncertain. Equity will protect the possession of the incumbents from unlawful intrusion. Injunction, and not quo warranto, is the proper remedy in such a case, where the city property is involved." It will be noted that the proposition asserts that equity will protect possession, but in this case the restraining order does not protect possession of the public books, records, funds, etc., but takes away possession. The case of *City of Huntington* v. *Cast* (1898), 149 Ind. 255, 48 N. E. 1025, supports the proposition quoted, but does not support respondent's position. In that case the complaint alleged that the illegally appointed board of metropolitan police commissioners was threatening to take control of the city streets, alleys, and public buildings, and to deprive the common council

and the legally elected officers of control, and that the defendant mayor was threatening to turn over to his codefendants certain property of the city. In deciding the case, this court said (p. 259): "It is also argued that the action brought by appellant was not the proper one; that this was a controversy as to the right to hold an office, and hence that *quo warranto,* and not injunction, was the proper remedy. If, however, appellees were proceeding, without authority of law, to take possession of the police property of the city, certainly those in possession might protect themselves from such invasion of their rights and the rights of the city by enjoining those who sought to wrest from them such possession until authority to do so were first shown. (Citing cases.) The welfare and good order of society and government require that those engaged in the discharge of public duties should not be disturbed by claimants whose right to discharge such functions is as yet uncertain. Equity will protect the possession of the incumbents from any unlawful intrusion. The public welfare requires that such protection should not be left to the totally inadequate remedy of an action for trespass." Applying the reasoning to the case at bar, it will be seen that the right of Kays and his associates to hold the offices was only established by their own assertion. It appears from the complaint that those in possession of the offices and of the city property were asserting that the election was illegal. It will be noted also that in the case cited the action was to protect the possession of property in the incumbents in office, while here the action seeks to divest those claiming to be the officers of possession of the city's property.

Respondent also says: "Injunction is the proper remedy to prevent the intrusion of a claimant to an office occupied by another under claim of right, where

the title to the office is not involved." But here, it appears from the complaint below, the very opposite effect is sought. In other words, injunction is sought to aid the intrusion of a claimant to an office occupied by another under a claim of right, and it seems that here the title to the office is involved. It is true that the complaint below alleges that those claiming to be the newly elected officers are in office and exercising the functions of office, but it appears, by express allegations, that they are not, in fact, in possession of the offices, or the books, records, property, or funds of the city, all of which would be necessary to their functioning.

Respondent cites *Landes* v. *Walls* (1903), 160 Ind. 216, 66 N. E. 679. In that case it appeared that the common council had redistricted the city of Greencastle, increasing the number of wards, and, by resolution, appointed the appellants as members of the common council to fill the vacancies that the ordinance created. It was alleged in the complaint that there was irregularity in the enactment of the ordinance, and that appellants were not therefore legal councilmen, although they were assuming to act. The court below granted a temporary injunction, preventing appellants from acting, from which interlocutory order the appeal was taken. In reversing the case, this court said (p. 218) : "The authorities clearly establish that courts of equity will not interfere to determine questions concerning the appointment or election of public officers or their title to office. (Citing many authorities.) Various reasons have been assigned for the rule,—as the existence of an adequate remedy at law, the non-concern of equity with matters of a political nature, and the impolicy of interfering with a *de facto* officer pending a contest as to his title. Appellees' counsel contend, however, that this is not a case of a contest; that the

complaint shows that the offices have not been created that appellants respectively claim to hold. We realize that there ought to be some distinction made between cases where the rights of third persons depend upon the validity of the acts of a person in possession and exercising the functions of an office and cases where the right of the latter to hold the office is drawn in question. There are a number of authorities which uphold the right of a court of equity to interfere on behalf of an officer *de facto,* claiming to be the officer *de jure,* to prevent another, especially an intruder, from wresting the office from him without process of law. (Citing *City of Huntington* v. *Cast, supra; Parsons* v. *Durand* [1898], 150 Ind. 203, 49 N. E. 1047; and many authorities from other jurisdictions.) *We need not pause to consider the basis on which these cases rest, for they go no further than to announce the authority of equity to maintain, without determining the title, the prima facie legal status of the situation until the question of title can be determined in the usual mode and by the appropriate tribunal."* (Our italics.)

While authorities may be found which hold that equity has jurisdiction to issue restraining orders and injunctions to maintain the status quo, none have come to our attention which sustain the right to change the status of the parties pending a determination of the controversy concerning the right to the office or the possession of the indicia of office upon the merits. We are not concerned here with the question of whether mandamus or quo warranto is the proper remedy in the court below. Respondent asserts that mandamus is the proper remedy to compel a retiring officer to turn over to his successor the office and its appurtenances, but the authorities cited go no further than to hold that it is a proper remedy where there is no controversy

concerning the right to hold the office. If there is a controversy, quo warranto would seem to be the remedy.

The alternative writ heretofore issued is made absolute.