STATE EX REL. McCLURE ETC. *v.* MARION SUPERIOR COURT, ETC.

[No. 29,787. Filed May 1, 1959. Rehearing denied June 3, 1959.]

*Glenn W. Funk* and *Smith & Yarling,* both of Indianapolis, for relator.

*Nelson Grills, John G. McNutt,* of counsel and *John M. Heeter,* of counsel, all of Indianapolis, for respondent.

ARTERBURN, J.—This is an original action asking for a writ of prohibition and mandate. It involves a dispute over the office of the Clerk of the Marion Circuit Court. The facts appear to be as follows:

Harry Gasper, Clerk of the Marion Circuit Court, died on April 7, 1959. The next day, April 8th, the Governor of this State designated the relator, Edwin McClure, as an appointee to fill the vacancy and issued his commission for such appointment. The relator took the oath of office and on the 9th day of April submitted his bond to the Board of County Commissioners of Marion County for approval. One of the members approved the bond, but two members, Durham and Virt, refused to do so, contending that they had the power to make the appointment rather than the Governor. McClure thereupon filed an action in mandate in the Marion Circuit Court to compel the Commissioners to perform the ministerial duty of approving the bond. Thereafter, on the same day, the Marion Circuit Court, after due notice and appearance by the County Commissioners, made and entered an order mandating the Commissioners to accept the bond and approve same, and as a basis for such action found that:

" . . . McClure shall perform the duties of the Clerk of the Circuit Court in all its functions as at least a de facto officer."

On the same day, but thereafter however, the two members of the Board of Commissioners, namely, Durham and Virt, purported to appoint Louise Gasper as Clerk of the Marion Circuit Court, and she thereupon filed an action in *quo warranto* in the Marion Superior Court Room No. 1, Walter M. Bell, Jr., Judge. As part of the relief in such action the respondent Judge issued without notice an order restraining the relator McClure "from entering said office and pretending to perform or performing any of the duties thereof, . . ." It is apparent that this order is in direct

conflict with the order made in the Marion Circuit Court.

On April 10th the relator herein filed his petition for a writ of mandate and prohibition directed against the Marion Superior Court Room No. 1, respondent herein. We issued a temporary writ.

There is in this case without question a conflict of assumed jurisdiction between two courts of equal and coordinate powers. It is well settled in such instances that the first court assuming such jurisdiction has such jurisdiction, to the exclusion of any other equal or coordinate court. *State etc.* v. *Marion Cir. Ct. etc.* (1959), 239 Ind. 327, 157 N. E. 2d 481. *State ex rel. Montgomery* v. *Sup. Ct. etc.* (1958), 238 Ind. 664, 154 N. E. 2d 375, 376; *State ex rel. Seal* v. *Superior Court of Knox County* (1943), 221 Ind. 36, 41, 46 N. E. 2d 226.

The Supreme Court of this State has imposed upon it by statute the duty of determining a dispute or conflict in jurisdiction between lower courts. Burns' Annotated Statutes §3-2201, 1946 Replacement (Supplement).

Both parties to this action insist that the real controversy here is: Who has the authority to fill a vacancy in the office of clerk of the circuit court—the Governor of the State of Indiana or the Board of County Commissioners? The parties have asked this court to make a final disposition of this controversy on the plea that they have no adequate remedy at law and that the public welfare requires a speedy determination of the issue in view of the approaching primary election and in order that the judicial processes not be hampered.

The Constitution makes no direct statement as to who shall fill a vacancy occurring in the office of clerk

of a circuit court. However, there are provisions therein which serve as a guide in the determination of the question.

In 1951 the Hon. Henry F. Schricker, Governor of the State of Indiana, requested an official opinion on the specific question here involved from Hon. J. Emmett McManamon, Attorney General of the State (1951 Attorney General's Official Opinion No. 104, p. 312). That opinion held that a vacancy in the office of clerk of the circuit court should be filled by the Governor and not "by the Board of County Commissioners."

Since that opinion is a rather exhaustive review of the law covering the constitutional provisions, we set forth the more pertinent parts thereof:

"OFFICIAL OPINION NO. 104

"November 29, 1951.
"Honorable Henry F. Schricker,
    Governor,
        State of Indiana,
            State Capitol,
                Indianapolis, Indiana.

"Dear Governor Schricker:

"We have your request for an official opinion which presents the following question:

" 'Should there be a vacancy in the office of Clerk of a Circuit Court by death, resignation or otherwise, who has the authority to fill the vacancy thus created?'

"The office of Clerk of the Circuit Court is created by Section 2, Article 6 of the Indiana Constitution, which provides as follows:

" 'There shall be elected, in each county by the voters thereof, at the time of holding general elections, a Clerk of the Circuit Court, Auditor, Recorder, Treasurer, Sheriff, Coroner, and Surveyor. The Clerk, Auditor, and Recorder, shall continue in office four years; and no person shall be eligible to the office of Clerk, Recorder, or Auditor, more than eight years in any period of

twelve years. The Treasurer, Sheriff, Coroner, and Surveyor, shall continue in office two years; and no person shall be eligible to the office of Treasurer or Sheriff more than four years in any period of six years.'

"Section 49-404 of Burns, 1933, provides:

" 'Whenever any vacancy occurs in any circuit or district office commissioned by the governor, he may fiill such vacancy until filled by a qualified successor.'

"Section 49-405 of Burns, 1933, provides:

" 'The board of county commissioners shall fill all (other) vacancies in county or township offices, except such township or other offices the vacancies in which are otherwise provided for; and such appointment shall expire when a successor is elected and qualified, who shall be elected at the next general or township election, as the case may be, proper to elect such officers.'

. . . . .

"In the case of Taylor v. State *ex rel.* (1906), 168 Ind. 294, the court had before it an Act of 1901 which fixed the time when the terms of certain county officers should begin. The act, both in the title and the body, referred to the 'county clerk.' The question was whether this applied to the clerk of the circuit court and it was held that it did not. The court said at page 296:

" 'The office in controversy exists in pursuance of a mandate of the Constitution of the State, and its proper name is "clerk of the circuit court." Const., Art. 6, §2, Bold v. Woods (1894), 9 Ind. App. 657.'

" 'In the course of legislation many duties have devolved upon this officer, wholly independent of his relation to the court, and in many instances he has been inaccurately styled "clerk of the county," and "county clerk." Correctly speaking no such officer as "county clerk" is known in the law of this State. The present controversy in no way involves legislation upon collateral subjects in which the clerk of the circuit court may be designated or referred to as "county clerk," and this opinion is not to be

construed as intimating that in any such cases the legislative intent may not be sufficiently manifest and validly expressed. The act under consideration (Acts 1901, *supra*) purported to fix the time when the terms of certain county officers should begin, and the first question arising upon this appeal is, whether that act effectually changed the beginning of the term of the clerk of the Sullivan Circuit Court from March 28, 1904, to January 1, 1905. . . .'

"The court held 'that the date of succession to the office of clerk of the Sullivan Circuit Court was not affected by the statute of 1901.'

. . . . .

"It being clear that the officer in question is clerk to the circuit court and an officer of that court, we refer to the nature of the circuit court. Section 1 of Article 7 of the Indiana Constitution provides:

" 'The judicial power of the State shall be vested in a Supreme Court, in Circuit Courts and such other courts as the General Assembly may establish.'

"Section 9 of Article 7 provides as follows:

" 'The State shall, from time to time, be divided into judicial circuits; and a Judge for each Circuit shall be elected by the voters thereof. He shall reside within the Circuit, and shall hold his office for the term of six years, if he so long behave well.'

"Webster defines 'circuit' as 'A regular or appointed journeying from place to place as in the pursuit of one's calling, as of a judge, or a preacher.' 'Circuit Court' is defined as 'A court which [s]its successively in different places in its circuit.'

"The circuit court in the days of the constitution was a true circuit court. The circuit consisted of a large number of counties, usually about ten. Each circuit court consisted of one presiding judge and two associate judges. Rev. St. 1938, p. 161. The judges then moved from county to county within the circuit. Such judges were not county officers, but were officers of a judicial circuit. In the

case of State *ex rel.* Howard v. Johnston (1884), 101 Ind. 223, at page 229, the court said:

" 'Under the Constitution a prosecuting attorney is an officer of a judicial circuit.'

"In State *ex rel.* v. Tucker (1874), 46 Ind. 355, at page 359, it was said:

" 'Judges of the circuit court and prosecuting attorneys are not states, county, or township officers.'

"This was quoted with approval in State v. Patterson (1913), 181 Ind. 660, 663.

"It is thus clear that the judge of the circuit court is not a county officer, but is an officer of a judicial circuit. It is also established that the clerk is an officer of the circuit court. All the clerks within a judicial circuit are officers of that circuit court.

. . . . .

"The duties of the clerk of the circuit court, as above pointed out, are for the circuit court. He is a ministerial officer of the judicial department. He performs no functions of government for the county of a political or civil character as such clerk of the court. Even though the Legislature might impose duties upon such clerk in addition to his duties as an officer of the court, they would be in the nature of *ex officio* duties and would not change the character of his office. The authorities make a distinction between a clerk and a clerk of a court. The latter is a prothonotary to the court.

"It may be argued that the clerk is a county officer because he is elected 'in the county.' I do not believe this fact can override the fact that he is an officer of the circuit court. It was contemplated, and the statutes provided at the time of the adoption of the Constitution of 1851, that the judges should hold court in each county. Terms of court were established by counties in the circuit and there was a clerk in each county where the court sat in moving around the circuit.

"A scrutiny of the records will reveal an inconsistency in the procedure in making such appointment. In some instances, appointments have

been made by the Governor, and in others by the Board of County Commissioners, but it is our opinion that the only conclusion to be reached, would be that where such appointment was made by the County Commissioners and properly certified to and commissioned by the Governor, that it is the exercise of the alternative by the Governor in the permissive language of Section 49-404, which provides that the Governor 'may' make such an appointment, rather than 'shall'. Consequently, a correct determination would be that in these instances, the Governor has not waived his statutory prerogative but merely concurred in a selection submitted to him.

"For these reasons and under these authorities, I am of the opinion that the clerk of the circuit court is not a county officer, but is an officer of the circuit court and a circuit officer. The clerk of the circuit court, being a circuit officer, and an officer commissioned by the Governor, (Section 49-201 Burns), any vacancy in that office should be filled by appointment by the Governor under the provisions of Section 49-404 of Burns, 1933, rather than by the board of county commissioners under the provisions of Section 49-405 of Burns, 1933."

The right and duty of the Governor to make such appointments as here in question have become the uniformly accepted practice in this State.[1]

1. Appointments made during the last ten years by the Governor to fill vacancies in office of clerk of circuit court.

| APPOINTEE | | COUNTY | DATE |
|---|---|---|---|
| Samuel Hinshaw | (S) | Randolph | 1/17/49 |
| Dorothy Allison | (S) | Fayette | 2/10/50 |
| Robert Harvey | (S) | Henry | 12/31/50 |
| Burnes Resenbeck | (S) | Pike | 2/14/51 |
| Owen Dillon | (S) | Owen | 2/16/51 |
| *Edna Russell* | (S) | Wayne | 11/28/51 |
| Dohrman Brotherton | (S) | Jay | 1/7/52 |
| Harry Washmuth | (C) | Switzerland | 12/4/53 |
| Paul Jones | (C) | Tipton | 6/14/54 |
| Clifford Johnston | (C) | Decatur | 12/22/54 |
| John Shank | (C) | Pulaski | 3/2/55 |

We are particularly impressed with the cogency of the reasoning in the case of *Taylor* v. *State ex rel.* (1906), 168 Ind. 294, 80 N. E. 849, in which this court held that an Act of 1901, which fixed the terms of certain county officers including "county clerks" was not applicable to *clerks of the circuit courts.*

It is to be noted that the legislature at the next session, in an amendatory Act with reference to its erroneous use of the term "county clerk," stated:

"WHEREAS, There is no such office or officer known under the Constitution or laws of the State of Indiana as County Clerk;"

and thereupon made a specific provision for the term of office of a clerk of a circuit court separate and distinct from the legislation pertaining to other county offices. Acts of 1903, ch. 19, p. 32.

We therefore have a distinct recognition by the legislature that the office of clerk of the circuit court is not a county office.[2]

Under the authority of Article 6, Section 9 of the Constitution of Indiana the legislature provided that

| | | | |
|---|---|---|---|
| Frank Manning | (C) | Newton | 1/6/56 |
| John Stellma | (C) | LaPorte | 12/31/56 |
| Albert Hones | (H) | Posey | 1/30/57 |
| Grace Jobe | (H) | Jefferson | 7/15/57 |
| Herbert Donald | (H) | Vermillion | 10/10/57 |
| Pauline Heistend | (H) | Vermillion | 2/19/59 |

* Denotes appointment made pursuant to Opinion of Attorney General 11/29/51.

(S) Appointment by Governor Henry F. Schricker

(C) Appointment by Governor George N. Craig

(H) Appointment by Governor Harold Handley

2. The same is true of judges of the circuit court, as well as prosecuting attorneys. *The State ex rel. Pitman* v. *Tucker* (1874), 46 Ind. 355, 359; *State* v. *Patterson* (1914), 181 Ind. 660, 105 N. E. 228.

the board of county commissioners may fill vacancies only "in county or township offices."

Thus we see the legislature has not given the county commissioners the power to fill a vacancy in the office of clerk of a circuit court. Burns' §49-405, 1951 Replacement.

The legislature on the contrary has provided:

"Whenever any vacancy occurs in any *circuit* or district office commissioned by the governor, he may fill such vacancy until filled by a qualified successor." (Our italics) Burns' Annotated Statutes §49-404, 1951 Replacement.

With the foregoing precedents before us we have no alternative but to hold that the clerk of the circuit court is not a county officer but rather a circuit officer, and that the appointive power to fill vacancies therein resides in the Governor of this State. To hold otherwise would reverse long-standing precedent in this State, observed by the legislative and executive divisions of the government, as well as the judicial.

The respondent calls our attention to the Journal of the Indiana Constitutional Convention of 1850, in which a discussion is recorded as to the method of filling a vacancy in the office of clerk of the circuit court. With reference to that rather extensive discussion in the respondent's brief, we need only point out that a proposal to have such a vacancy filled by the board of county commissioners was abandoned by the Convention. Nothing, so far as we can find, resulted from the discussion and therefore it is of no value on the point here involved.

The record shows in this case that the relator McClure was appointed and assumed the duties of the office of Clerk of the Marion Circuit Court on a *de facto*

basis, prior even to the purported appointment of Louise Gasper by the County Cimmissioners. In her action in the respondent Marion Superior Court she alleges that Edwin McClure "has taken possession of the office of Clerk of the Marion Circuit Court." The respondent, Marion Superior Court Room No. 1 is therefore in the position of presuming to oust a *de facto* officer who is in possession of the office, and installing one who is not, in the office, by use of a restraining order or injunction. Such action disturbs the *status quo* pending litigation and cannot be upheld.

Judge Fansler, speaking for this court in *State ex rel. McGovern et al.* v. *Gilkison, Judge* (1935), 208 Ind. 416, 423, 196 N. E. 231, makes the following statement:

> "While authorities may be found which hold that equity has jurisdiction to issue restraining orders and injunctions to maintain the ▆ status quo, none have come to our attention which sustain the right to change the status of the parties pending a determination of the controversy concerning the right to the office or the possession of the indicia of office upon the merits."

There is neither a *de facto* nor a *de jure* basis for the issuance of the restraining order or injunction against the relator, Edwin McClure, who acts ▆ under the commission and appointment of the Governor of the State of Indiana as Clerk of the Marion Circuit Court.

The alternative writ heretofore issued is made absolute and permanent. In view of the public emergency, the Clerk of this Court is directed to certify this opinion forthwith to the respondent court below.

Landis, C. J. and Achor and Bobbitt, JJ., concur.

Jackson, J., dissents with opinion.

DISSENTING OPINION

JACKSON, J.—This case is here in an original action on a Petition for Writ of Mandate and Prohibition.

There are grave questions raised herein, the first of which is the question of jurisdiction of this court where there is pending in the court below an INFORMATION FOR QUO WARRANTO entitled State of Indiana ex rel. Louise Gasper v. Edwin McClure. This would in my opinion be the proper action, in the proper forum, for the determination of the questions there raised. The second question is the propriety of deciding here and now, on the merits, a question that in the ordinary method of procedure would, or could, come to this court after a trial on the merits in the court below, only by way of appeal.

The real party in interest, in the outcome of the quo warranto proceedings, Louise Gasper, is not before this court in this action.

Both the relator and the respondent, in the response, the Relator's Verified Reply to Respondent's Return, and their briefs urge this court, in this action, to determine the ultimate question involved in this litigation, namely: WHEN A VACANCY OCCURS IN THE OFFICE OF CLERK OF A CIRCUIT COURT BY DEATH, RESIGNATION OR OTHERWISE, DOES THE GOVERNOR, OR THE BOARD OF COUNTY COMMISSIONERS, OF THE COUNTY WHEREIN THE VACANCY EXISTS, HAVE THE AUTHORITY TO APPOINT A SUCCESSOR TO FILL THE VACANCY?

On the theory that the parties hereto have not only waived, but have invited this court to assume jurisdiction that otherwise might be questioned, and on the further theory that the public welfare requires a speedy determination of the issues here involved, in

order that the legal processes and the administration of justice in Marion County, Indiana, be performed and administered without question and confusion, the court decided to accept such jurisdiction and to determine such question.

In arriving at a decision in this case the court proceeded to the determination of the ultimate question of who has the authority to fill the vacancy created by the death of the clerk of the Marion Circuit Court.

The relator contends and urges that the Governor of the State of Indiana has the sole authority to appoint the clerk of said court and issue the commission to his appointee. In support of such contention he cites the following authority:

"OFFICIAL OPINION NO. 104 November 29, 1951

Honorable Henry F. Schricker,
    Governor,
        State of Indiana,
            State Capitol,
                Indianapolis, Indiana.

Dear Governor Schricker:

We have your request for an official opinion which presents the following question:

'Should there be a vacancy in the office of Clerk of a Circuit Court by death, resignation or otherwise, who has the authority to fill the vacancy thus created?'

The office of Clerk of the Circuit Court is created by Section 2, Article 6 of the Indiana Constitution, which provides as follows:

'There shall be elected, in each county by the voters thereof, at the time of holding general elections, a Clerk of the Circuit Court, Auditor, Recorder, Treasurer, Sheriff, Coroner, and Surveyor. The Clerk, Auditor, and Recorder, shall continue in office four years; and no person shall be eligible to the office of Clerk, Recorder, or

Auditor, more than eight years in any period of twelve years. The Treasurer, Sheriff, Coroner, and Surveyor, shall continue in office two years; and no person shall be eligible to the office of Treasurer or Sheriff more than four years in any period of six years.'

Section 49-404 of Burns, 1933, provides:

'Whenever any vacancy occurs in any circuit or district office commissioned by the governor, he may fill such vacancy until filled by a qualified successor.'

Section 49-405 of Burns, 1933, provides:

'The board of county commissioners shall fill all (other) vacancies in county or township offices, except such township or other offices the vacancies in which are otherwise provided for; and such appointment shall expire when a successor is elected and qualified, who shall be elected at the next general or township election, as the case may be, proper to elect such officers.'

"Whenever there has been or shall be a vacancy in the office of Clerk of the Circuit Court of any county of this State, and when such vacancy shall have been or shall be filled by appointment, the person who is appointed to fill such vacancy shall hold office until the end of the term for which the predecessor of such appointee, whose unexpired term said appointee is serving, shall have been elected, and such appointment shall, without election, serve the full unexpired term of such predecessor.

"The question thus is: Is the office of Clerk of the Circuit Court a 'circuit' or a 'county' office?

'. . . A clerk may be a person who keeps the records of a court, but not necessarily so. He may be the keeper of other records, such as are kept by the recorder, and he also may, and at one time die [did] in this State, perform the duties of the county auditor. Jones v. Cavins, 4 Ind. 305.

'A county clerk may be the prothonotary of a court, county auditor, and county recorder at

once, but these offices are, nevertheless, separate and distinct, though held by one person called clerk. 19 Am. & Eng. Encyc. of Law, 548.

'The words county clerk are not used in our constitution to designate the functionary whose duty it is to keep the records of the courts in the various counties, but that official is designated as the clerk of the circuit court. Const. Ind., Article 6, section 1; R. S. 1894, Section 151.

'The terms county clerk and clerk of the circuit court are often used interchangeably, it is true, but incorrectly so, we think.'

It is pointed out in the opinion that a clerk of a court keeps the records of the court, while a county clerk may keep various records and may not keep the records of a court or be a clerk of the court.

"In the case of Taylor v. State ex rel. (1906), 168 Ind. 294, the court had before it an Act of 1901 which fixed the time when the terms of certain county officers should begin. The act, both in the title and the body, referred to the 'county clerk'. The question was whether this applied to the clerk of the circuit court and it was held that it did not. The court said at page 296:

'The office in controversy exists in pursuance of a mandate of the Constitution of the State, and its proper name is 'clerk of the circuit court.' Const., Art. 6, §2; Bolds v. Woods (1894), 9 Ind. App. 657.

'In the course of legislation many duties have devolved upon this officer, wholly independent of his relation to the court, and in many instances he has been inaccurately styled 'clerk of the county,' and 'county clerk.' Correctly speaking no such officer as 'county clerk' is known in the law of this State. The present controversy in no way involves legislation upon collateral subjects in which the clerk of the circuit court may be designated or referred to as 'county clerk,' and this opinion is not to be construed as intimating that in any such cases the legislative intent may not be sufficiently manifest and validly expressed. The act under consideration (Acts 1901, *supra*) purported to fix the time

when the terms of certain county officers should begin, and the first question arising upon this appeal is, whether that act effectually changed the beginning of the term of the clerk of the Sullivan Circuit Court from March 28, 1904, to January 1, 1905. . . .'

"The court held 'that the date of succession to the office of clerk of the Sullivan Circuit Court was not affected by the statute of 1901.'

"The clerk of a court is a ministerial officer of the court, having custody of its records and seals. In 10 Am. Jur., Clerks of Court, Section 2, page 942, it is said:

'The clerk of a court of justice, using the term as the title of a particular officer, is a ministerial officer of the court, having the custody of its records and seals, with power to certify to the correctness of transcripts from such records, and possessing authority to perform certain acts of a judicial nature incidental to his ministerial duties. In some jurisdictions the term "prothonotary" is applied to such an officer. . . .'

"The duties of a clerk, as set forth in the above work, at Section 14, are as follows:

'The duties of a clerk of court are, generally speaking, to serve in a ministerial capacity for the court, ordinarily to perform certain judicial or *quasi*-judicial duties in connection therewith, to act as the custodian of its records, to receive money in his official capacity, but, as a rule, only as authorized by statute, and generally to perform such duties as are enjoined by statute or imposed by the lawful authority of the court. The powers conferred upon clerks of the courts are to be strictly construed, however, and are to be exercised in accordance with the statute conferring them.'

"In *Ex parte Brown* (1906), 166 Ind. 593 the court said at page 601:

'The clerk of this court is an officer thereof and in the discharge of his duties in the making up and safekeeping of our records he may be considered as an arm thereof. He is charged by

law with the duty of entering and recording the proceedings of the court and of safely keeping all the records and papers belonging to his office, and he may, by rule of court, be required to perform such official duties. In fact, in recording and making up the proceedings of the court he may be said to act as its *amanuensis*, subject to its control. . . .

'. . . While the clerk of this court is a ministerial officer only and the functions which he performs are wholly of that character, still he is a ministerial officer of the judicial department, and it would certainly appear as a logical conclusion, under all the circumstances, that this court is the proper tribunal to which its clerk may apply for advice in matters pertaining to his office of the character of those herein involved.'

"It thus seems clear that the clerk of the circuit court, provided for by the constitution, is an officer of that court whose duties are to act as a ministerial officer of that court, have custody of its records and generally to perform such duties as may be enjoined upon him by lawful authority of the court and by statute. These are in substance the duties enjoined upon him by statute. Section 49-2710, *et seq*. of Burns, 1933.

"The clerk is an officer of the court. In Buell v. The State (1880), 72 Ind. 523, 524, it is said:

'Courts take judicial knowledge of the signatures of their officers, and we may well presume that the Porter Circuit Court knew the signature of Rufus P. Wells to be that of its clerk.'

"In Hipes v. State (1880), 73 Ind. 39, at page 40, the court said:

'It is contended by appellant's counsel, that the affidavit upon which the information is based is insufficient because not attested by a seal. The jurat is as follows: "Subscribed and sworn to before me, this 22nd day of January, 1880. John S. Hedges, Clerk." We think that we are bound to presume that the affidavit was sworn to before the clerk of the Henry Circuit

Court. The court *ex officio* takes notice of its officers and their signatures, and we must presume that the Henry Circuit Court did take notice that John S. Hedges was its clerk, and that the signature attesting the affidavit was his. Brooster v. The State, 15 Ind. 190; Buell v. The State, 72 Ind. 523.'

"It being clear that the officer in question is clerk to the circuit court and an officer of that court, we refer to the nature of the circuit court. Section 1 of Article 7 of the Indiana Constitution provides:

'The judicial power of the State shall be vested in a Supreme Court, in Circuit Courts and such other courts as the General Assembly may establish.'

"Section 9 of Article 7 provides as follows:

'The State shall, from time to time, be divided into judicial circuits; and a Judge for each Circuit shall be elected by the voters thereof. He shall reside within the Circuit, and shall hold his office for the term of six years, if he so long behave well.'

"Webster defines 'circuit' as 'A regular or appointed journeying from place to place as in the pursuit of one's calling, as of a judge, or a preacher.' 'Circuit Court' is defined as 'A court which [s]its successively in different places in its circuit.'

"The circuit court in the days of the constitution was a true circuit court. The circuit consisted of a large number of counties, usually about ten. Each circuit court consisted of one presiding judge and two associate judges. Rev. St. 1938, p. 161. The judges then moved from county to county within the circuit. Such judges were not county officers, but were officers of a judicial circuit. In the case of State *ex rel*. Howard v. Johnston (1884), 101 Ind. 223, at page 229, the court said:

'Under the Constitution a prosecuting attorney is an officer of a judicial circuit.'

"In State *ex rel*. v. Tucker (1874), 46 Ind. 355, at page 359, it was said:

'Judges of the circuit court and prosecuting attorneys are not state, county, or township officers.'

This was quoted with approval in State v. Patterson (1913), 181 Ind. 660, 663.

It is thus clear that the judge of the circuit court is not a county officer, but is an officer of a judicial circuit. It is also established that the clerk is an officer of the circuit court. All the clerks within a judicial circuit are officers of that circuit court.

A county officer is defined in the case of State ex rel. Osborn v. Eddington (1934), 208 Ind. 160. In that case the court said at page 165:

'The office of county superintendent of schools is not provided for in the Constitution, nor does the Constitution define county office. Consequently in order to determine whether the county superintendent of schools is a county officer we must accept some definition of county officer and, in the light of such definition, examine his official duties and his official relationship to the county and to the state.

The Supreme Court of the United States has defined a county officer as follows: "An officer of the county is one by whom a county performs its usual political functions; its functions of government." Sheboygan County v. Parker (1865), 70 U. S. 93, 96.

The county superintendent performs no functions of government for the county of a political or civil character. His powers and duties relate entirely to the functions of school government. The county is not an administrative agency for school government, either as a school corporation or school district. Consequently the powers and duties of a county superintendent of schools can not devolve upon him as an officer of a county; but must devolve upon him as an officer of the public school system, which is a state institution. All of the powers and duties of a county superintendent pertain to the administration of school government. . . .'

The duties of the clerk of the circuit court, as

above pointed out, are for the circuit court. He is a ministerial officer of the judicial department. He performs no functions of government for the county of a political or civil character as such clerk of the court. Even though the Legislature might impose duties upon such clerk in addition to his duties as an officer of the court, they would be in the nature of *ex officio* duties and would not change the character of his office. The authorities make a distinction between a clerk and a clerk of a court. The latter is a prothonotary to the court.

It may be argued that the clerk is a county officer because he is elected 'in the county'. I do not believe this fact can override the fact that he is an officer of the circuit court. It was contemplated, and the statutes provided at the time of the adoption of the Constitution of 1851, that the judges should hold court in each county. Terms of court were established by counties in the circuit and there was a clerk in each county where the court sat in moving around the circuit.

A scrutiny of the records will reveal an inconsistency in the procedure in making such appointment. In some instances, appointments have been made by the Governor, and in others by the Board of County Commissioners, but it is our opinion that the only conclusion to be reached, would be that where such appointment was made by the County Commissioners and properly certified to and commissioned by the Governor, that it is the exercise of the alternative by the Governor in the permissive language of Section 49-404, which provides that the Governor 'may' make such an appointment, rather than 'shall'. Consequently, a correct determination would be that in these instances, the Governor has not waived his statutory prerogative but merely concurred in a selection submitted to him.

For these reasons and under these authorities, I am of the opinion that the clerk of the circuit court is not a county officer, but is an officer of the circuit court and a circuit officer. The clerk of the circuit court, being a circuit officer, and an officer commissioned by the Governor, (Section 49-201 Burns), any vacancy in that office should be filled by appointment by the Governor under the

provisions of Section 49-404 of Burns, 1933, rather than by the board of county commissioners under the provisions of Section 49-405 of Burns, 1933."

The case of *The Governor* v. *Nelson* (1855), 6 Ind. 397, (correct citation 6 Ind. 496), cited and relied on by relator, was a controversy over the *term* of the commission issued by the Governor to the clerk and not over the appointment. The *appointment* of Nelson as clerk of the Allen Circuit Court having been made by the board of commissioners of Allen County to fill the vacancy caused by the death of Joseph Sinclear who had been in June, 1852, commissioned as clerk for the term of seven years and who died in September, 1854. Nelson was qualified, entered on the duties of the office and served till the next general election in October, 1854, at which election Nelson was duly elected clerk of the Allen Circuit Court, a certificate of his election was forwarded to the proper office, and on March 15, 1855, a commission issued to him as clerk of the Allen Circuit Court, for the term of seven years from June 15, 1852. He requested corrected commission for a term of four years which the governor refused, hence the controversy.

The case of *Gosman* v. *The State, ex rel. Schumacher* (1886), 106 Ind. 203, 6 N. E. 349, cited by the relator, was a proceeding by information to determine which of two claimants was entitled to the office of clerk of the circuit court of Dubois County. There was no dispute as to the facts.

At the general election held in October, 1876, Gosman was elected for a term to commence August 18, 1877. He qualified, took office and at the general election in October, 1880, was re-elected. On August 18, 1881, he entered upon his second term. At the general election held in November, 1884, Basil L. Green was

elected to succeed Gosman. On August 6, 1885, after he had received his commission and filed his bond, but, without having taken the oath of office, Green died. The board of commissioners appointed the relator Schumacher to fill the vacancy August 19, 1885. He was duly commissioned by the governor and qualified according to law. Gosman, claiming the right to hold over until his successor was elected and qualified, refused to surrender the office. The court held that as Gosman was ineligible to hold over on account of the statutory and constitutional prohibition of the clerk continuing in office "more than eight years in any period of twelve years". Sec. 2, Art. 6 (Sec. 152, R. S. 1881) and Sec. 3, Art. 15 (Sec. 225, R. S. 1881) he could not hold over, that the office became vacant and the appointment of Schumacher by the board of county commissioners and the issuance of his commission by the governor was valid and that he was entitled to the office and affirmed the judgment of the lower court.

The case of *Enmeier* v. *Blaize* (1932), 203 Ind. 475, 181 N. E. 1, cited by the relator, concerned a controversy between the parties to determine the rights and status of the parties as affected by Chapter 59, Acts 1929, p. 157, which purported to change the time of the beginning of the term of office of the clerk of the circuit court of Knox County at a time different than the expiration of the term of office of the then incumbent holding such office. The original action was filed by Blaize who was elected clerk at the general election November 2, 1926, for a term of four years, and on January 3, 1927, he filed his bond as such clerk-elect and took and subscribed his oath of office, and took office February 25, 1928, pursuant to such election and his commission. Thereafter the act above referred to was enacted. Appellant, Enmeier, was elected clerk

of the Knox Circuit Court for the full term of four years at the general election on November 4, 1930, and thereafter received from the Governor his commission. The question to be decided by the court was whether the term of the appellant, Enmeier, clerk-elect, began February 25, 1932, at the end of the term of appellee, Blaize, or whether the term of appellant, Enmeier, began January 1, 1933, as provided by Chapter 59, Acts 1929, p. 157, *supra*. The question presented was this, did the act violate certain sections of the state constitution?

The case cited does not bear on the point in issue in this case, and therefore, we do not pursue it further.

The case of *Hovey, Governor* v. *The State, ex rel. Schuck* (1891), 127 Ind. 588, 27 N. E. 175, 22 Am. St. Rep. 663, 11 L. R. A. 763, cited by the relator, was an action by the appellee, Schuck, to mandate the governor to issue to him (Schuck) a commission as the duly elected Auditor of Jennings County. The complaint alleged among other things that the relator, Schuck, was duly elected to the office of Auditor of Jennings County at the regular election held in November, 1890; that the proper returns were made out and filed in the office of the Secretary of State, that thereafter Schuck demanded of the Governor, in his office at Indianapolis, that the Governor issue him his commission as such Auditor. It further appears that there was a controversy as to whether the relator, Schuck, who prior to his election as such Auditor had been Treasurer of Jennings County, had failed to account for certain funds as such Treasurer. The question involved was this: Could the relator, Schuck, mandate the Governor to issue to him a commission as Auditor of Jennings County? This court there decided adversly to the relator Schuck.

The case cited does not bear on the point in issue in this case, and therefore, we do not pursue it further.

The case of *Tucker* v. *State* (1941), 218 Ind. 614, 35 N. E. 2d 270, cited by the relator, is too long to attempt to compress the various questions therein raised in this opinion. We, therefore, incorporate here the portion thereof quoted in relator's brief as being in point in this case:

"Concerning the last phrase of Section 1 of Article 15 of the Constitution, that: 'All officers, whose appointment is not otherwise provided for in this Constitution, shall be chosen in such manner as now is, or hereafter may be, prescribed by law,' it is said that to prescribe a mode of appointment and to make the appointment are two different things; that (page 446 of 118 Ind., page 273 of 21 N. E.) : 'The legislature may provide by law for the appointment of all officers not provided for in the constitution, but the appointing power must be lodged somewhere within the executive department of the government.'

There were no contentions and no reasons to consider where in that department the power must be lodged, but, since the power to appoint is executive, it is clear that it would have to be lodged with some officer in the executive department who had executive power, and the only such is the Governor."

The case of *Taylor* v. *State ex rel.* (1907), 168 Ind. 294, 80 N. E. 849, cited by the relator states:

"After the relator had been elected and COMMISSIONED AS SUCH CLERK," (our emphasis)

and later said:

"The office in controversy exists in pursuance of a mandate of the constitution of the state, and its proper name is 'Clerk of the Circuit Court'. Article 6, Sec. 2, Const. Ind.; *Bolds* v. *Woods*, 9 Ind. App. 657, 36 N. E. 933. In the course of legislation many duties have been devolved upon

this officer, wholly independent of his relation to the court, and in many instances he has been inaccurately styled 'Clerk of the County,' and 'county clerk.' Correctly speaking, no such officer as 'county clerk' is known in the law of this state."

The respondent contends and urges that the boards of commissioners of the various counties in the state have the sole authority to appoint a clerk of the circuit court, and that said officer is a county officer.

Article 6, §2, of the Constitution of Indiana, Vol. 1, page 131, Burns' Revised Statutes, 1955 Replacement, reads as follows:

"§2. Designated county offcers—Terms.—There shall be elected, in each county by the voters thereof, at the time of holding general elections, a Clerk of the Circuit Court, Auditor, Recorder, Treasurer, Sheriff, Coroner and Surveyor. The Clerk, Auditor, Recorder, Treasurer, Coroner and Surveyor shall continue in office four years; and no person shall be eligible to the office of Clerk, Auditor, Recorder, Treasurer or Coroner more than eight years in any period of twelve years: Provided, That the Treasurer of each county re-elected at the general election in 1952 shall continue in office until January 1, 1957 and shall not be eligible for re-election to the office of County Treasurer at the general election in 1956. (As amended November 4, 1952)"

The respondent in his brief urges with equal vigor that the office of clerk is a county office, the authority to fill a vacancy therein being vested in the board of county commissioners. The respondent makes the following points in his brief:

"The Constitution makes the Clerk of the Circuit Court a county officer in a clear and unambiguous manner.

"County and other local offices are provided for in Article 6 of the Indiana Constitution. Section 2 of Article 6, provides that:

'there shall be elected, in each county by voters thereof, at the time of holding general elections, a Clerk of the Circuit Court . . .

Article 6, Section 3, provides:

"Such other county and township officers as may be necessary, shall be elected, or appointed, in such manner as may be prescribed by law.'

"It is to be noted that by providing that such other counties and townships officers shall be elected, the Constitutional convention was holding specifically that the officers listed in Section 2 of Article 6 were county officers. It is to be noted that the qualifications of a Clerk of the Circuit Court are found in Article 6, Section 4. This section provides:

" 'No person shall be elected, or appointed, as a county officer, who shall not be an elector of the county; . . .

"It is to be noted by Section 4 that the Constitutional Convention specifically provided that the person elected Clerk of the Circuit Court was elected 'as a county officer.' Finally, Article 6, Section 9 provides: 'Vacancies in County, Township, and town offices shall be filled in such manner as may be prescribed by law.'

"Burns' Ind. Ann. Stat. Sec. 49-406 provides:

'The Board of County Commissioners shall fill all (other) vacancies in county or township offices, except such township or other offices the vacancies in which are otherwise provided for; and such appointment shall expire when a successor is elected at the next general or township election, as the case may be, proper to elect such officers.'

"It is apparent from reading the cited sections of the Constitution and the two sections of the law quoted that the Clerk of the Circuit Court is a county officer and the appointment of a Clerk to fill a vacancy is the responsibility of the Board of County Commissioners.

"The same principles of construction apply to the Constitution that is applied to the construction of statutes. The Indiana Supreme Court has stated:

" 'In construing a statute, or any part thereof, courts are not authorized to disregard the plain language employed by the lawmakers in its enactment. It is the duty of the court to accept the act as written, and if valid to enforce it as enacted. And where the law is clear upon its face, and when standing alone is fairly susceptible of but one construction, that construction must be given. It has been properly said by the Supreme Court of the United States that the province of construction lies wholly within the domain of ambiguity. Hamilton v. Rathbone, 175 U.S. 414-421, 20 Sup. Ct. 155, 44 L. Ed. 219.'[1]

"A person opposing the position taken in this brief may rest his case upon the title of the office. The office is called 'clerk of the circuit court.' The question has been raised concerning whether or not the Clerk of the Circuit Court by the nature of his designation becomes an officer of the Circuit. This position was taken by the Attorney General in an opinion written in 1951.[2] The only case cited by the Attorney General dealing directly with the question of whether or not the Clerk of the Circuit Court is an office of the circuit was Taylor v. State ex rel. 168 Ind. 294, 1906. An examination of this case will disclose that the Supreme Court does not hold that the Clerk of the Circuit Court is a Circuit Officer. It held merely that to designate this office as County Clerk is not a proper designation and an act purporting to apply to 'county clerks' would not apply to the office of the Clerk of the Circuit Court:

" 'The statute is addressed directly to that subject, and supplies no aids to its interpretation, other than the names used. The term 'county clerk' occurs both in the title and in the body of the act. In cases of uncertainty or ambiguity, necessitating a construction of statutes, the primary object is to ascertain and give effect to the legislative intention. But, where the language of enactments is free from ambiguity and uncertainty, courts cannot supply defects or

---

1. *State* v. *Sopher,* 157 Ind. 360, 368-9, 1901.
2. 1951 O. A. G. No. 104.

omissions in order to carry out more fully the supposed purpose and intent of the legislature. Endlich, Interp. of Stat., 18, 22.

"In case of misnomer or misdescription, when such description words constitute the very essence of the statute, unless the words are used so clear and accurate as to refer to the particular subject intended, and to be incapable of being applied to any other, the mistake will be fatal. Black, Interp. of Laws 38. Applying these principles to the act under consideration, it is our opinion that, in order to effect a change in the commencement of the term of a future Clerk of the circuit court, by an independent act directed solely to that end, the act should designate the office by its correct name and title. This is the safe rule of interpretation in the absence of extrinsic aids, and any other would make the legislative purpose a matter of speculation and conjecture."[1]

"The Attorney General in his opinion cites a number of cases in which the Supreme Court had held that the Clerk of the Circuit Court among his other duties is also an officer of the Circuit Court. This the respondent admits. Both the Sheriff and Clerk are secondarily offices of the circuit court, but both offices are county offices under the terms of the Indiana Constitution.

It is submitted that the issue is not what the Supreme Court finds the duties of the Circuit Court Clerk to be, but rather what the constitutional fathers intended the office to be when the constitution was written. The Indiana Appellate Court has expressed the principle of the law which requires the Court to examine all of the sections of a statute to determine its meaning:

" 'In construing any statute, the legislative intent must be kept constantly in view and if the language is plain and unambiguous, the legislative intent as expressed by the language must prevail. Such intention, however, is to be ascertained from an examination of the whole as well as the separate sections or parts of an act; and

1. *Taylor* v. *State* ex rel., Supra 296-7.

when so ascertained, the intention thus expressed will control the strict letter of the statute, or the literal import of words or terms where to adhere to such strict letter or literal import would lead to injustice absurdity or contradictory provisions. Breenbush Cemetery Assn. v. Van Natta 1912, 49, 1913, 179 Ind. 671, 100 N. E. 842.'[2]

"Clearly an examination of all of Article 7 and Article 6 of the Indiana Constitution indicates that the persons who drafted the Constitution intended the Clerk of the Circuit Court to be a County Officer. The section under which the clerk's office was created is the section providing for county offices. All of the circuit officers are provided for in the section creating the judiciary of the state.

"In the event, the Court should find the constitution ambiguous in relation to the question of the appointment of a Clerk of the Circuit Court when a vacancy occurs, the Court will examine the history of the provision as found in the journals of the enacting body to determine the will and intent of the constitutional convention.

" 'In Edgar v. Board, Etc. (1880), 70 Ind. 331, 338, this court said: "It has never been held by this court, that for the purpose of construction or interpretation, and with the view of ascertaining the legislative will and intention in the enactment of a law, the courts may not properly resort to the journals of the two legislative bodies to learn therefrom the history of the law in question, from its first introduction as a bill until its final passage and approval. Where, as in this case, a statute has been enacted, which is susceptible of several widely differing constructions, we know of no better means of ascertaining the will and intention of the legislature, than that which is afforded, in this case, by the history of the statute, as found in the journals of the two legislative bodies."[1]

---

2. *Vollmer* v. *Board of Commissioners,* 53 Ind. App. 152-3, 1912.

1. *Arnet* v. *St. ex rel.,* 168 Ind. 180.

"An examination of the debates in the Indiana Convention of 1850 and the Journal of that Convention will disclose beyond all question of a doubt that the Constitutional Fathers intended the office of Circuit Court Clerk to be a County office.

"One of the first steps of the Convention was the appointment of a number of standing comittees to which was referred all matters touching upon the Constitution. Two of these committees were: A Committee on the Organization of the Courts of Justice, and the other a Committee on County and Township Organization, Powers, and Officers.

"(Conv. Jor.: 1850-41-42) 'The committee appointed to report a plan for the business for this Convention, and to designate the number and functions of the different standing committees, beg leave to make the following report:

"That the standing committees shall be the following, to whom shall be referred all such matters touching the Constitution as properly belong to each, and that they report, without argument, the provisions, alterations, or amendments required.'

"5. On the organization of the courts of justice, to consist of one member from each judicial circuit, . . . .

"11. On county and township organization, powers, and officers, to consist of one member from each congressional district. . . . . .

"On motion of Mr. Read. The report was laid upon the table, and one hundred and fifty copies ordered to be printed.

"The following Monday morning the President of the Convention announced the membership of the standing committees contained in the report. (Convention Journal 1850 52-54)

"One of the members of the Convention submitted a resolution which placed those sections of the 1816 Constitution concerned with the Clerk of Circuit Courts in the committee of County Township Organization Powers and Duties of Officers.

"(Conv. Jor. 1850 118) 'On motion of Mr. Smith of Ripley, The order of business was sus-

pended for half an hour, to enable members to submit resolutions of inquiry for the purpose of reference to standing committees. Mr. Smith of Ripley submitted the following resolution: RESOLVED, That section 9, and so much of section 10 as refers to clerks of the circuit court, and all of section 12, of article 5, of the Constitution, be referred to the committee on county and township organization, powers and duties of officers. The question being taken on the adoption of the resolution. It was decided in the affirmative.'

"The fact that this resolution was carried is the first major indication that the members of the Constitutional Convention intended the Clerk of the Circuit Court to be a county officer and not a circuit court officer. At a later date in the Convention, the Chairman of the Committee on County and Township Organization made a report which included the office of Clerk of the Circuit Court as a county officer. A portion of that report is quoted here:

"(Conv. Jor. 1850 149-150) 'Mr. Smith of Ripley, Chairman of the committee on county and township organization, &c., made the following report:

Mr. President:

The Committee on county and township organizations, to whom were referred certain portions of the present Constitution of Indiana, have had the same under consideration, and herewith report four sections for the amended Constitution, and ask to be discharged from their further consideration. . . . . . . . Number 5, Sec. 1. There shall be elected in each county, by the qualified electors thereof, a sheriff, coroner, recorder, county auditor, county treasurer, and a clerk of the circuit court, at the time and place of holding elections for members of the General Assembly. . .Sec. 2. When the office of clerk of the cricuit court of any county shall be vacant, the circuit court of such county or the judge thereof, shall appoint a clerk pro tem, who shall hold his office till the next general

election, and until his successor shall be chosen and qualified. . . . . .

"And the sections reported were read a first time and passed to a second reading.'

"At a subsequent day there was read a second time the recommendation of the Committee on County and Township Organization.

"(Conv. Jor. 1850 301.) 'The first section of No. 5 was taken up and read a second time.'

"A member of the Convention attempted to strike from the list of county officers the Clerk of the Circuit Court. This attempt was defeated in the Convention.

"(Conv. Jor. 1850 302) 'Mr. Lockhart moved to amend as follows: Strike out the words "clerk of the circuit court." which was decided in the negative.'

"The recommendation of the committee was ordered engrossed for a third reading.

"(Conv. Jor. 1850 311) '. . . The question then being, "shall the first section of No. 5 be engrossed for a third reading?" It was decided in the affirmative.'

"The second section of the recommendations of the Committee on County and Township Organization provided for the appointment of a circuit court clerk if the office should become vacant. The discussion of this matter is rather lengthy in the Constitutional Debate."

The respondents filed photostatic copies of certain pages of the convention journal, to incorporate those pages here would require an opinion entirely too voluminous, and we, therefore, here attempt to summarize that portion applicable to the issue here in controversy.

Quoting from page 842 of the Convention Journal, Mr. Borden makes the following point:

"But, sir, there is another reason why I think we should take from the judges the appointing power, and, as I imagine, a much stronger one than that I have just recited, and that is, that every officer who has a public duty to perform should be elected by the people, where it can be so done. And, as the gentleman from Sullivan has said, the county commissioners must, in the main, be better judges of the qualifications of a man residing in their county than a judge of a circuit court who does not reside in the county. Now look at the State of Ohio. In many instances the county clerk completely rides over the people. He knows he is not elected by them, but appointed by the judge; and in many instances when information is wanted by citizens, which it is his duty to impart, he will pay no attention to them, or perhaps even go so far as to give them an uncivil answer."

Quoting from page 844 of the convention journal, Mr. Borden offered the following suggestion:

"I desire to suggest a mere verbal alteration in the section, the propriety of which, I think, will be apparent to every gentleman at once. The 'clerk' mentioned in the section is styled 'a Clerk of the Circuit Court.' But we have not yet determined what the name of the court will be. It may be that it will be denominated 'District Court,' or by some other name. In order, therefore, to avoid any difficulty, I think it would be better that he should be styled 'county clerk.' It seems to me that that name would be more appropriate; but I leave it with the Convention.

After some conversation, the amendment was withdrawn."

In arriving at a decision we think it significant that the amount of the clerk's bond is fixed and approved by the board of county commissioners. Acts 1875, ch. 24, §2, p. 37, being §49-2703, Burns' 1951 Replacement.

In looking to the statute for a definition of the duties of the clerk and for aid in determining the question before us, we are compelled to the belief that the duties

of the clerk of the circuit court as an arm of the court constitute the ministerial duties of his office and that the other and major portion of the duties required of him by statute and in the performance of which he is required to exercise his discretion, judgment, and final decision, makes the duties of his office far more than ministerial. The duties of the clerk required by statutes are far too numerous to incorporate in this opinion.

Acts 1939, ch. 164, §3, p. 753, being §4-3803, Burns' 1946 Replacement, provides as follows:

"(a) Officers of the Court. The clerk of the circuit court of the county shall be the clerk of the magistrates court for magistrates appointed for the county seat, and so far as practicable for other magistrates. . . ."

Acts 1931, ch. 39, §1, p. 99, being §4-2901, Burns' 1946 Replacement, create the Marion County Probate Court. Acts 1907, ch. 151, §4, p. 240, being §4-2904, Burns' 1946 Replacement, provides as follows:

"Clerk and sheriff—Fees.—The clerk of the circuit court and the sheriff of the county where such court may be organized shall be respectively the clerk and sheriff of said court; . . ."

Acts 1925, ch. 194, §1, p. 457, being §4-2501, Burns' 1946 Replacement, create the Marion County Municipal Court. Acts 1925, ch. 194, §8, p. 457, being §4-2508, Burns' 1946 Replacement, provides as follows:

"Clerk—The clerk of the circuit court of the county in which such municipal court may be located shall be the clerk of said municipal court; . . . ."

Acts 1881 (Spec. Sess.), ch. 34, §1, p. 111, being §4-2301, Burns' 1946 Replacement, creates criminal courts in certain counties (one of which was Marion). Acts 1881 (Spec. Sess.), ch. 34, §2, p. 111, being §4-2302,

Burns' 1946 Replacement, provides among other things as follows:

". . . The clerk of the circuit court and the sheriff of the county shall be clerk and sheriff of such criminal court, . . . ."

Acts 1907, ch. 207, §1, p. 360, being §4-1401, Burns' 1946 Replacement, establishes the Marion Superior Court. Acts 1871, ch. 22, §3, p. 48, being §4-1404, Burns' 1946 Replacement, provides as follows:

"The clerk of the circuit court and the sheriff of the county where such court may be organized shall be respectively the clerk and sheriff of said court; . . ."

Acts 1945, ch. 347, §1, p. 1647, being §9-3101, Burns' 1956 Replacement, created juvenile courts in certain counties (one of which was Marion). Acts 1945, ch. 347, §4, p. 1647, being §9-3104, Burns' 1956 Replacement, provides as follows:

"The clerk of the circuit court shall be the clerk of the juvenile court . . . ."

The above courts are county courts, and the legislature in creating them and by legislative enactment designating the clerk of the circuit court the clerk of the various courts the legislature created, certainly adopted and approved the 1850 constitutional convention action in classifying the clerk of the circuit court as a COUNTY officer.

The majority opinion herein relies heavily on 1951 Op. Atty. Gen. No. 104, p. 312, heretofore set out in full in this opinion. In the case of *Dodd and Others* v. *The State* (1862), 18 Ind. 56, this court there passed on the validity of the opinion of the attorney general in the following words at pages 66 and 67:

"It is insisted that when an officer of State, in pursuance of this statute, calls upon, and obtains from, the law officer of the State, a legal opinion in reference to his duties, and proceeds in accordance with the same, that a suit will not lie upon his official bond, whether said opinion is sound law or not. And the question is asked, if this is not so, then what use is there in requiring the opinion?

"There are several reasons why this position is not tenable. First, if the opinion can shield the officer from a civil suit, when he does wrong, then it ought to be binding upon him; and of course, as it is expressed in as strong language, when called for, binding upon the Legislature. The Auditor audits money accounts before the applicant can receive the same from the treasury. Suppose under a mistaken view of the law, based upon an erroneous opinion, he should refuse to allow a just account to a private citizen. Would that opinion be a bar to proceedings to obtain the amount so due? Would an unconstitutional law be held binding because an opinion had been given to the Legislature in advance that it was valid? The position is so plainly untenable that it is useless to pursue the subject.

"As to the question propounded. The opinion is for the information of the officer. He can follow it or not."

Interestingly enough in the years that have elapsed since the rendition of the original opinion, this court has not seen fit to change its opinion as to the effect of an attorney general's opinion.

The relator places emphasis on the COMMISSION issued to the various officers, and we deem it proper to incorporate here that section of the statute relating thereto, reading as follows:

"All officers, except members of the general assembly, specially designated in the constitution, or who are elected by the general assembly or appointed by the governor, and all judges, shall be commissioned by the governor."

1 R. S. 1852, ch. 19, §1, p. 223, being §49-201, Burns' 1951 Replacement.

In the case of *Glascock* v. *Lyons* (1863), 20 Ind. 1, at page 3, 89 Am. Dec. 299, on the question of the necessity of a commission, this court said:

> "It is perhaps the correct theory, in reference to an office elective by the people, that the fact that an eligible person is duly chosen to fill the same, confers upon him the right, the title to such office, and the certificate of election, or commission, is in some respects something like a deed to land, the mere evidence of such title."

In the case of *The State ex rel. Cornwell* v. *Allen* (1863), 21 Ind. 516, 83 Am. Dec. 367, on the question of commission where the former auditor, having been duly elected and having entered on his duties as such, abandoned the office to enlist in the army, served a part of his term of enlistment and then returned and claimed the office in 1862; the relator, Cornwell, was a candidate for and elected to the office at the general election in October, 1862. On November 8, 1862, he demanded from the governor a commission as auditor, which commission the governor refused to issue; thereafter, the relator at a special session of the board of commissioners of said county tendered his bond which was accepted. He took the oath of office before the clerk of the Vigo Circuit Court and demanded possession of the office. Possession of the office was refused and suit was filed. The judgment in the lower court was for the defendant, and on appeal the decision of the trial court was reversed. This court in that case said at page 521 of 21 Ind. that ". . . it is probably the law that where the title to an office is solely derived from Executive appointment, the commission of the Executive is the only legal evidence of such title. *Beal* v. *Morton*, 18 Ind. 346; while, on the other hand, where

the title to an office is derived from popular election, the commission of the Executive is not absolutely necessary to the right to exercise the duties of such office. *Glasscock* v. *Lyon,* 20 Ind. 1."

In the case of *Shannon* v. *Baker* (1870), 33 Ind. 390, 391, this court there said: "It seems to be settled, that where the title to an office is derived from popular election, the commission of the executive is not necessary to the right to exercise the duties of such office. *State, ex rel. Cornwell,* v. *Allen,* 21 Ind. 516; *Glascock* v. *Lyons,* 20 Ind. 1."

Again in the same case this court said at page 393, "It is not the certificate of the clerk in one case, nor of the commission issued by the governor in the other, that confers the right. Such certificate and commission are only evidence of such right."

The majority opinion asserts that there is a conflict of assumed jurisdiction between two courts of equal and co-ordinate powers and that the Marion Circuit Court having first assumed jurisdiction the Marion Superior Court, Room No. 1, Walter M. Bell, Jr., Judge, was, therefore, without authority to act. With the principle of law I agree, but I disagree with its application to the facts here. Factually, the action in the Marion Circuit Court was an action in mandate by the relator, McClure, against the commissioners to compel them to approve his bond; the action in the Marion Superior Court, Room No. 1, Walter M. Bell, Jr., Judge, was in quo warranto by Louise Gasper against McClure to determine which of the two claimants was entitled to the office. In my opinion that court had, and still has, first and, therefore, exclusive jurisdiction to determine that question.

In the event that all of the proper parties to the action below were properly before this court and in

the event this court had full and proper jurisdiction of the persons and subject matter of this action, then the decision of this court should have been:

A.   That the office of the clerk of the circuit court is a county office;

B.   That the board of commissioners has the power and duty to fill a vacancy in such office;

C.   That the Marion Superior Court, Room No. 1, Walter M. Bell, Jr., Judge, had authority to issue the temporary restraining order here complained of by the relator;

D.   That the Temporary Writ of Mandate and Prohibition heretofore issued by this court on April 10, 1959, should be vacated and set aside.

NOTE.—Reported in 158 N. E. 2d 264.