Nancy WINTERS, Deborah Morris, and Betty Wadlington, individually and as representatives of all similarly situated individuals, Plaintiffs,

v.

Faye MOWERY, individually and in her official capacity as Marion County Clerk; the United States of America; and Marion County, Indiana, Defendants.

**IP 91–919 C.**

United States District Court, S.D. Indiana, Indianapolis Division.

Nov. 4, 1993.

Richard A. Waples, Indiana Civil Liberties Union, Stephen Laudig, Indianapolis, IN, for plaintiff.

Andrew P. Wirick, City–County Legal Division, Indianapolis, IN, for Faye Mowrey.

Winfield Ong, Indianapolis, IN, for U.S.

Patricia Polis McCrory, John D. Roop, Jr., Harrison & Moberly, Indianapolis, IN, for Marion County.

## ENTRY

BARKER, District Judge.

Plaintiffs move for partial summary judgment on the issue of Defendants' liability for payment of the interest accruing on court held spousal maintenance and child support payments. For the reasons set forth below, the Court enters full summary judgment on all the claims, finding in favor of plaintiffs and against defendants on the interest entitlement issues and in favor of defendant Mowery. The Court orders defendants to pay plaintiffs the interest that accumulated on the payments held by the Marion County Clerk dating back to the date this lawsuit was first filed [1] and dismisses plaintiffs' suit

---

1. Although the plaintiffs have captioned their motion as a motion for partial summary judg-

for damages against Faye Mowery in her individual and official capacities.

## I. BACKGROUND

Nancy Winters, Deborah Morris, and Betty Wadlington (collectively "Plaintiffs") are class representatives of all persons who since August 15, 1989, have and will receive spousal maintenance and child support payments disbursed through the Marion County Clerk ("Clerk").[2] The class consists of an estimated 50,000 persons at any one time. *See* Complaint ¶ 11. Plaintiffs have sued defendant Faye Mowery ("Mowery"), the Marion County Clerk, in both her individual and official capacities for damages and injunctive relief. On June 17, 1992, the Court added the United States of America as a party defendant because it asserts a claim to a portion of the interest received on invested support funds. The third defendant is Marion County, a political subdivision of Indiana and ultimate recipient of the interest generated from the held funds.

Pursuant to a divorce decree, Nancy Winters, a resident of Marion County, receives $700 each month in spousal maintenance payments, which her former husband pays to the Clerk. Ms. Winters usually does not receive the spousal support money from the Clerk until seven to 21 days after the Clerk receives Mr. Winters' check, a delay common to other similarly situated members of the class.

Under a dissolution decree, Deborah Morris, a Marion County resident and mother of two children, receives $150 weekly or approximately $600 per month in child support paid by her former husband through an out-of-state check. Her support payment is held by the Clerk for a minimum of twenty days before disbursement, a typical delay experienced by class members whose former spouses pay their spousal support with checks drawn on out-of-state banks.

Betty Wadlington, a resident of Marion County, has one child from a previous marriage and receives $170 in child support, which her former husband pays every two weeks to the Clerk by means of a check drawn on an Indianapolis bank. Mowery delays payment of spousal support funds when the payor pays by personal check drawn on an Indiana bank account for ten days, resulting in a payment delay of approximately two weeks, which is common to members of the class similarly situated.

Ms. Wadlington also represents the class members who have experienced a delay in receiving child support arrearages from IRS tax refund intercepts. In April 1991, pursuant to federal law, the IRS intercepted Ms. Wadlington's former husband's tax refund to recover $950 in unpaid child support prior to April 1991. The IRS paid this arrearage to Mowery for distribution to Ms. Wadlington; however, Mowery informed Ms. Wadlington that she would not receive the $950 for approximately six months, a delay typical to members of the class similarly situated.

Once a spouse or parent makes payments to the Clerk, the Marion County Clerk's Office holds in-state checks for ten business days and out-of-state checks for 20 business days before disbursing the funds. After receiving these payments, the Clerk deposits these support funds into the "child support" account at Indiana National Bank.[3] The child support account is a zero-balance account and "sweeps" nightly into the "parent" account. This parent account is then "swept" weekly into the "Bison fund" account where the funds accrue interest. The inter-

---

ment on the issue of "who owns the interest," the practical effect of deciding this question also answers the underlying Fifth Amendment claim in this suit.

**2.** 31-2-2-1 provides:

Where any person or persons, by the terms of any court order or decree, is ordered to pay support money to or for the dependent wife, husband, father, mother, child or children of the person or persons, and the dependents are being supported in whole or in part by public funds, or where the parent of the dependents

has sought the assistance of the agency designated to administer Title IV–D of the federal Social Security Act, the court shall order that *the payment of such support money be made to the clerk of the circuit court of the county* wherein the decree or order is entered. (emphasis supplied).

**3.** Since the filing of this suit, the Indiana National Bank has become the National Bank of Detroit.

est earned on support payments totals over $200,000 per year, none of which is paid to the recipients of the support payments.

Plaintiffs allege they own the interest earned on the support payments because the Clerk holds the monies on their behalf as a trustee.[4] Plaintiffs further contend that because they own the interest, the Clerk's failure to pay them this interest constitutes an illegal taking of their property without just compensation and a deprivation of their property without due process of law in violation of the Fifth and Fourteenth Amendments.

Mowery admits that the support payments collected each month by her on behalf of the class members is not her property and that she holds the support payments for the benefit of and for payment to the child or spouse. Answer, ¶¶ 42, 43. She also concedes that she transfers the accrued interest to the Marion County General Fund every six months. However, defendants argue that plaintiffs have no property interest in the interest because the interest was generated due to the special resources of the state and that plaintiffs would be incapable of obtaining such interest were they to invest on their own. Moreover, defendants further contend

that withholding the interest generated from the pooled funds during the period the money is in the trusteeship of the county clerk is a reasonable payment for the administrative costs of the services the county renders to plaintiffs. Thus, defendants claim that even if a taking had occurred, the plaintiffs received just compensation.

Indiana Code sections 31–2–8–1[5] and 33–19–6–5[6] require the payor spouse to pay $20 per year to the Clerk. Mowery claims this fee is levied to help defray the costs of administering the support fund program. In 1989, Mowery collected $180,792.50 in total fees for her services in administering support payments, approximately one-third of the total amount due for that year. *See* Defendant Mowery's Response To Plaintiff's Second Set of Request For Admissions, ¶ 18.

In their prayer for relief, Plaintiffs request this Court to certify this lawsuit as a class action, issue a permanent injunction to prevent Defendant Mowery from holding the support monies for the above stated periods of time before disbursement, and direct Mowery to pay the earned interest to the owners of the principal. Plaintiffs also re-

---

**4.** Ind.Code § 31–1–11.5–13(a) provides:

Upon entering an order for support, the court shall require that the support payments be made through the clerk of the circuit court as trustee for remittance to the person entitled to receive such payments, unless the court has reasonable grounds for providing or approving another method of payment. (emphasis added).

**5.** § 31–2–8–1 provides:

(a) Whenever in any court proceeding an order is in force for:

(1) the support and maintenance of the other party to the proceeding; or

(2) the support and maintenance of a child or children;

the person required to pay the support shall pay it.

(b) The clerk shall collect from that person, in addition to the payment or payments, the fee specified in IC 33–19–6–5.

(c) The clerk may collect any unpaid fee in a proceeding for contempt.

**6.** § 33–19–6–5 provides:

(a) This section applies to an action in which a final court order requires a person to pay support or maintenance payments through the clerk.

(b) The clerk shall collect a fee in addition to support and maintenance payments. The fee is:

(1) twenty dollars ($20) for the calendar year in which the initial order is entered, unless the first payment is due after June 30 of that calendar year;

(2) ten dollars ($10) for the calendar year in which the initial order was entered, if the first payment is due after June 30 of that calendar year; and

(3) in each subsequent year in which the initial order or a modified order is in effect, twenty dollars ($20) if the fee is paid before February 1, or thirty dollars ($30) if paid after January 31.

(c) The fee required under subsection (b) is due at the time that the first support or maintenance payment for the calendar year in which the fee must be paid is due.

(d) The clerk may not deduct the fee from a support or maintenance payment.

(e) Except as provided under IC 33–17–1–4(d) [duties of the clerk upon improper disbursement of funds], the clerk shall forward the fee collected under this section to the county auditor in accordance with IC 33–19–1–3(a).

Ind.Code § 33–19–6–5 (1992 Supp.).

quest compensatory damages, costs, and attorneys fees.

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

 Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Proc. 56(c). In passing on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or determine the truth of the matter, but it is instead to decide whether there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The burden rests squarely on the party moving for summary judgment to show "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). If doubts remain as to the existence of a material fact, then those doubts should be resolved in favor of the nonmoving party and summary judgment denied. See Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir.1989).

### B. DEFENSES UNDER SECTION 1983 AND THE ELEVENTH AMENDMENT

We first consider whether Mowery is subject to liability under 42 U.S.C. § 1983.[7] In Will v. Michigan Dept. of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the Supreme Court held that state officials "acting in their official capacities" are outside the class of "persons" subject to liability under 42 U.S.C. § 1983. The Court

reasoned that although "state officials literally are persons," an official-capacity suit against a state officer" is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself." 491 U.S. at 71, 109 S.Ct. at 2311.

 The key question in determining whether Mowery is liable in her official capacity for damages is whether Mowery is a "state official" for purposes of § 1983. In Parsons v. Bourff, 739 F.Supp. 1266 (S.D.Ind.1989), the court held that the clerk of a county circuit court was a state official not subject to suit in his official capacity but subject to suit for damages in his individual capacity. The court relied on State ex rel. McClure v. Marion Superior Court, Room No. 1, 239 Ind. 472, 158 N.E.2d 264, 269 (1959), where the Indiana Supreme Court found that a circuit court clerk was a state official because the Governor fills the position's vacancies and because the clerk's duties are to the court, not to the county. Parsons, 739 F.Supp. at 1267. We find that Parsons controls this case and that Mowery is not a "person" subject to suit in her official capacity under § 1983.

 We next examine whether Mowery can be sued in her personal capacity under § 1983. To establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.E.2d 114 (1985). Under the doctrine of qualified immunity, "public officials performing discretionary functions are protected against suits from damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." Doe v. Bobbitt, 881 F.2d 510, 511 (7th Cir.1989) (citing Harlow v. Fitzgerald,

---

7. Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)).

■ Mowery may enjoy qualified immunity in her personal capacity only if a reasonable person would have believed that holding the support funds in an interest-bearing account and retaining the interest were lawful in light of clearly established constitutional or statutory rights and the information she possessed. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738; *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *Meyer v. Robinson,* 992 F.2d 734 (7th Cir.1993). The Supreme Court defines "clearly established" as follows:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent.

*Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039.

In this case, it is not apparent under existing law that retaining interest accrued on spousal and child support payments is unlawful. We find that Mowery has not violated "clearly established" law by her actions and should not be liable in her individual capacity for damages because a reasonable person could have believed that retention of interest income on funds held in the public treasury was lawful. Mowery cannot be sued for damages in her official and personal capacities.

■ With regard to plaintiffs' suit for injunctive relief, a person can be sued in her official capacity for injunctive relief and would be deemed a "person" under § 1983 because official-capacity actions for prospective injunctive relief are not treated as actions against the State. *See Will,* 491 U.S. at 71, n. 10, 109 S.Ct. at 2311–12 n. 10 (quoting *Kentucky v. Graham,* 473 U.S. at 167 n. 14, 105 S.Ct. at 3106 n. 14). Plaintiffs' suit against Mowery for injunctive relief will be allowed and is not barred by any defense under § 1983.

■ The same results obtain under an Eleventh Amendment [8] analysis. The Eleventh Amendment bars suits for money damages against state officials sued in their official capacities, because "a judgment against a public official 'in his official capacity' imposes liability on the entity that he represents...." *Brandon v. Holt,* 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). However, under *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), state officials may be sued in their official capacities for injunctive relief, although they may not be sued for money damages. A federal court may enjoin a state officer to refrain from future actions that violate federal law or to take prospective actions to comply with constitutional mandates. *Id.* Thus, under both § 1983 and the Eleventh Amendment cases, we find no bar to a suit against Mowery for prospective injunctive relief; however, actions for damages against Mowery in both her official and individual capacities are barred and therefore dismissed.

## C. FIFTH AMENDMENT CLAIMS

■ The Fifth Amendment prohibits governmental taking of private property "for public use without just compensation." To state a cognizable claim of a taking in violation of the Fifth Amendment, plaintiffs must first show that they possess a recognized property interest which may be protected by the Fifth Amendment. *Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 124–25, 98 S.Ct. 2646, 2659–60, 57 L.Ed.2d 631 (1978). In *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), the Supreme Court noted that:

> [t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.... Property

8. The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

In *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976), the Supreme Court made it clear that "the sufficiency of the claim of entitlement must be determined by reference to state law."

We first examine whether plaintiffs have a property interest under state law. Three Indiana Code sections are informative. Ind. Code § 31–1–11.5–13(a) provides that the Clerk receives money from the payors and holds it as trustee for the payees. Ind.Code § 5–13–4–20 states that:

> 'Public funds' means all fees and funds of whatever kind or character coming into the possession of any public officer by virtue of that office. The term does not include support payments made to the clerk of a circuit court under IC 31–1–11.5–13.

Ind.Code § 5–13–9–6(b)(2) provides that:

> Interest from investments of funds controlled by court orders must be receipted to that fund unless otherwise designated by the court order.

These statutes suggest that the defendants do not own the principal or the interest generated from it. Defendant Mowery admits that she does not own the money she holds; however, the defendants argue that because their unique resources enabled them to generate the interest on the held support payments, plaintiffs should not be able to reap a windfall, which, left to their own devices, they could not have obtained. We address this argument under our analysis of whether a taking occurred. We find that the

state statutes do not affirmatively create a property interest in the interest for the plaintiffs; however, they do suggest that the state does not own the interest.

 Even without clear guidance from Indiana statutes, we are convinced that Plaintiffs had more than a "unilateral expectation" that the interest accumulated from their principal belonged to them. It is axiomatic that interest earned from principal belongs to the principal holder. *See B & M Coal Corp. v. United Mine Workers*, 501 N.E.2d 401 (Ind.1986), *cert. denied sub nom. Spencer County Clerk v. B & M Coal Corp.*, 481 U.S. 1050, 107 S.Ct. 2183, 95 L.Ed.2d 839 (1987) (county's retention of interest earned on an appeal bond, invested under circuit court monies investment statute, amounted to an impermissible taking); *see also Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 163, 101 S.Ct. 446, 451, 66 L.Ed.2d 358 (1980) ("The usual and general rule is that any interest on an interpleaded and deposited fund follows the principal and is to be allocated to those who are ultimately to be the owners of that principal). Moreover, the language of the statute suggests that the Clerk holds the plaintiffs' money as a trustee for their ultimate benefit, not for the benefit of the court or the county.[9] The Clerk's purpose in holding the spousal and child support payments is to make a fair distribution among the recipients, not make a windfall from funds which they do not own. The parties do not dispute that plaintiffs own the principal held by the county clerk in a fund in trust. Moreover, as we discuss below, giving plaintiffs the interest accumulated on their principal preserves the value of the payments to which they are entitled. We find that plaintiffs have a property interest in the interest accumulated on the spousal support and child maintenance payments held by the Clerk and devolving to the county.[10]

---

**9.** *See* 31–1–11.5–13 provides:

(a) Upon entering an order for support, the court shall require that support payments be made through the clerk of the circuit court as trustee for remittance to the person entitled to receive payments, unless the court has reasonable grounds for providing or approving another method of payment.

(b) The clerk of the circuit court shall maintain records listing the amount of such payments,

the date when payments are required to be made, the names and addresses of the parties affected by the order, and the information required to be submitted to the clerk under subsections (c) and (d). (emphasis supplied).

**10.** Nor do we find persuasive defendants' claims that administrative costs of disbursing additional interest would wipe out any gain to the plaintiffs. First, defendants are required to set up an ac-

Having found that plaintiffs have a protectible property interest, we next examine whether not awarding the interest to the plaintiffs amounted to a taking. In *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 124–25, 98 S.Ct. 2646, 2659–60, 57 L.Ed.2d 631 (1978), the Supreme Court identified several factors for determining whether a taking has occurred: (1) "the economic impact of the regulation on the claimant"; (2) "the extent to which the regulation has interfered with distinct investment-backed expectations"; and (3) "the character of the governmental action"— whether the interference with property can be "characterized as a physical invasion by government" or whether the interference "arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *See also Connolly v. Pension Benefit Guaranty Corp.*, 475 U.S. 211, 225, 106 S.Ct. 1018, 1026, 89 L.Ed.2d 166 (1986). The government may impose regulations to adjust rights and economic interests among people for the public good, as long as the government does not force "some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *See Armstrong v. United States*, 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960).

In this case, we find that the plaintiffs have satisfied the first and third factors from *Penn Central* because the economic impact on at least some of the plaintiffs of the deprivation is significant and because the withholding of the interest deprives plaintiffs of complete use of such funds. The key question is whether plaintiffs have a "distinct investment-backed expectation" in the interest.

Defendants argue that plaintiffs, left to their own devices, would not have been able to generate the same amount of interest that the defendants generated because of their unique ability to pool the small amounts together and bargain with a bank for a certain interest rate. Thus, defendants claim that plaintiffs lack an investment-backed expectation. We disagree.

It is undisputed that Plaintiffs have a legitimate claim of entitlement to the support payments that constitute the principal held by defendants. We find that awarding interest accumulated during the holding periods compensates plaintiffs for the delay in obtaining payments that are the recipients' property. The value of the plaintiffs' money received ten or twenty days, or even six months later is not the same as money disbursed to plaintiffs immediately. Unless such money is accompanied by interest, plaintiffs will not receive after the delay period the same value of what they would have received had no waiting period existed. Thus, the plaintiffs' investment-backed expectation is in obtaining the value of their principal at the time it was paid to the county clerk.[11] We decline to speculate how plaintiffs might have used the money had it been disbursed to them without any holding period.[12]

The Supreme Court addressed a factually similar situation in *Webb's Fabulous Phar-*

---

count for plaintiffs under Ind.Code 31–2–2–2 which provides:

Upon the making of such decree or order by the court, the clerk shall immediately set up an appropriate account system in the case and shall maintain a continuous record of the payments to each account thereafter.

Requiring the clerk to compute individual interest even if compounded should not be unduly burdensome.

11. Coincidentally, on October 28, 1993, Chief Justice Randall Shepard of the Indiana Supreme Court announced that the Court had approved the practice of allowing interest on lawyers' trust accounts to be used for legal aid to the poor. Without commenting on how this Court would address the validity of such a practice if called upon to do so, we note that a key distinction exists between lawyer trust fund cases and this

case. In lawyer trust fund cases, the recipients of the principal—the lawyer or his client (if the money is returned to her)—have no "investment-backed expectation" on the interest accruing from the client's funds as opposed to the recipients of the spousal support funds, who do have such an expectation. We discuss the lawyer trust fund cases defendants cite in footnote 12.

12. Two cases on which defendants rely—*Cone v. State Bar of Florida*, 819 F.2d 1002 (11th Cir. 1987) and *Washington Legal Foundation v. Massachusetts Bar Foundation*, 993 F.2d 962 (1st Cir.1993) are distinguishable because both involved lawyer trust accounts in which nominal amounts were pooled to generate interest. In *Cone*, the court found no taking in not awarding $2.25 in interest on $13.75 held in a lawyers' trust account because standing alone, the client's funds could generate no interest. In *Washington*

*macies, Inc. v. Beckwith,* 449 U.S. 155, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980). In *Webb's,* the Supreme Court struck down, as an unconstitutional violation of the Fifth Amendment Takings Clause, a Florida statute under which a county took as its own $100,000 in interest accruing on an interpleader fund deposited in the registry of the county court for one year. The Court first found that claimants of the interpleaded funds had a property interest in the interest because the principal sum deposited with the court was "private property" and interest should follow principal. Moreover, another Florida statute provided for a separate fee to be paid to the county registry for holding interpleaded funds; thus, there was insufficient justification for the county to take the interest on interpleaded funds when the county registries were receiving fees for the costs related to holding the interpleaded funds.

The court emphasized the narrowness of its holding as follows:

> We hold that under the narrow circumstances of this case—where there is a separate and distinct state statute authorizing a clerk's fee "for services rendered" based upon the amount of principal deposited; where the deposited fund itself concededly is private; and where the deposit in the court's registry is required by state statute in order for the depositor to avail itself of statutory protection from claims of creditors and others—Seminole County's taking unto itself . . . the interest earned on the interpleader fund while it was in the registry of the court was a taking violative of the Fifth and Fourteenth Amendments.

*Id.* at 164, 101 S.Ct. at 452–53.

In this case, a state statute exists authorizing a clerk's fee for the disbursement of funds.[13] Defendants maintain that the amounts collected under the statute are insufficient to cover the administrative burden of disbursing checks to recipients; thus, retaining interest on plaintiffs' funds is justified and not an unconstitutional taking because the interest earned compensates for defendants' administrative services.

Defendants' argument would be more convincing if it retained a flat fee for its administrative services or deducted a uniform amount from each payment received. However, by assessing its fee in the form of withholding interest, the defendants have failed to set forth a rational relationship between the amount withheld and the service rendered. For example, for the same services rendered by the clerk, plaintiffs may pay differing amounts. A plaintiff with a greater spousal or child support payment or a lengthier holding period would pay more in lost interest than a recipient with smaller payments or shorter hold periods. While it is true that the amount of any fee retained by the state need not be precisely calibrated to the use a party makes of a governmental service,[14] there must be some relationship between the amount of money withheld and the service rendered by the Clerk. Finding that the amount withheld to cover administrative costs bears no relationship to the interest withheld from individual plaintiffs, we find that defendants' actions amount to a taking without just compensation.

Finding no genuine issue of material fact regarding whether the members of the class have a protected property interest in the interest from support payments held by defendants or whether the interest was taken

---

*Legal Foundation,* the court rejected plaintiffs' position that the deposit of clients' funds into lawyer trust accounts "transformed a lawyer's fiduciary obligation to clients into a formal trust" in which the client reserved the right to the beneficial use of the funds. *Id.* at 974. *Washington Legal Foundation* differs from this case because the client did not seek the interest itself, only the right to exclude others from the beneficial use of it.

Neither case involved a fund that receives a steady flow of payments over the course of many years. In this case, the amounts held by the Clerk could very well generate interest that is not de minimis. In any case, this Court finds speculative defendants' argument that plaintiffs could not generate interest on their support payments were such payments not pooled and held by the Clerk.

**13.** See Ind.Code §§ 33–19–6–5 and § 31–2–8–1, whose text is provided in footnotes 3 and 4, *supra.*

**14.** *See U.S. v. Sperry Corp.,* 493 U.S. 52, 53, 110 S.Ct. 387, 390, 107 L.Ed.2d 290 (1989).

without just compensation, we enter summary judgment in favor of plaintiffs on the issues of ownership of the interest and on plaintiffs' taking claim.

## REMAINING MOTIONS

The court has already certified the class pursuant to Fed.Rule Civ.Proc. 23(b)(3). *See* Agreed Order, March 11, 1992. The court also grants Plaintiffs' Motion For Leave To File A Reply Instanter. The court further grants Plaintiffs' Motion For Segregation and Depositing of Funds. Defendant United States' Motion To Dismiss Or, In The Alternative, To Drop The United States As A Party Or, In The Alternative, For A More Definite Statement is denied. Defendant's Motion To Strike Affidavits of Nancy Winters and Betty Wadlington is denied. Plaintiffs' Motion To Strike Affidavit of Anne Kilinski is also denied.

## CONCLUSION

The court concedes, in issuing this ruling, that it is not likely to be received as welcome news by an already fiscally-strapped municipal government. The dwindling levels of funding to support municipal services is a concern to all citizens.

However, the court's role in this matter is necessarily limited to adjudicating the legal issues placed before it by the parties, thereby leaving to the legislative and executive branches the admittedly nettlesome task of implementing the ruling within the constitutional and statutory framework defined and explicated by the court. The task of creating a workable regulatory and procedural response to this decision is within the unique capabilities of the non-judicial branches of government. The court does not intend, by its rulings, to foreclose such cost-shifting devices as a required fee to be paid by the payor or recipient of the support payments to offset the costs incurred by the Clerk in providing the service of brokering the payments. Creating a workable regulatory and procedural scheme to implement this decision will be difficult, if for no other reason than the sheer number of transactions and the often relatively small amounts of money involved on which interest calculations will now be required. It is possible, of course, that the practical consequence of the court's order

requiring the reinvestment of the support funds for the benefit of the plaintiffs and the payouts of the earned interest to the plaintiffs will be the development of a procedure whereby the time frame for the payouts to the recipients will be greatly accelerated, perhaps avoiding the necessity of any investment or interest accrual. In this judge's view, if a program of accelerated payouts results from this litigation, it might well be the best possible outcome of all.

Finding no genuine issue of material fact that plaintiffs have a property interest in the interest derived from the investment of the spousal and child maintenance payments held by the county clerk in trust and that therefore a taking without just compensation has occurred, we enter summary judgment in favor of plaintiffs and grant plaintiffs' prayer for injunctive relief. Defendants are ordered to pay plaintiffs all interest earned on funds held by the clerk or county dating from August 15, 1991, the date this lawsuit was filed, and to invest all future funds for the benefit of recipients. Plaintiffs' suit against Mowery in her official and individual capacities for damages is dismissed.

It is so ORDERED.

## JUDGMENT

In accord with the Court's entry of this date, judgment is entered in favor of plaintiffs and against defendants on plaintiffs' taking claim and on the issue of ownership of the interest. Defendants are ordered to pay plaintiffs the interest accruing on the plaintiffs' principal since August 15, 1991, the initial date of plaintiffs' lawsuit in accordance with a schedule and formula devised by plaintiffs' counsel and approved hereafter by the court. Plaintiffs' suit for damages against Mowery in her official and individual capacities is dismissed. Plaintiffs are entitled to reasonable attorneys' fees on the claims on which they were "prevailing parties," documentation of which should be submitted to this court within 30 days from the date of this judgment.

It is so ORDERED.